<u>UNITED STATES DISTRICT COURT</u>
<u>DISTRICT OF CONNECTICUT</u>

| | | |
|---|---|---|
| **Gwendoline Aboah, individually, and on behalf of others similarly situated** | : | **CIVIL ACTION NO.:** |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| **V.** | : | |
| | : | |
| **Fairfield Healthcare Services, Inc. d/b/a BrightStar Care of Fairfield & Southbury and Peter R. Moore,** | : | **May 15, 2020** |
| | : | |
| **Defendants** | : | |

<u>COLLECTIVE AND CLASS ACTION COMPLAINT</u>

I.      **INTRODUCTION**

1.      Employers must pay overtime to employees who work over forty hours in a week. 29 U.S.C. Sec. 201, *et. seq.*; C.G.S. Sec. 31-58 *et seq.* Third-party employers of "live-in domestic service" employees have a duty to pay them overtime. 29 C.F.R. Sec. 552.109(c). When a "live-in domestic service" employee's sleep period is "interrupted by a call to duty, the interruption must be counted [by the employer] as hours worked." 29 C.F.R. Sec. 785.22(b). "[I]f the employee cannot get at least 5 hours' sleep during the scheduled period ***the entire time is working time***." *Id.* (emphasis added). Employers must pay wages to employees for their meal breaks if that time is spent predominantly for the benefit of the employer. *Reich v. S. New Eng. Telecomms. Corp.,* 121 F.3d 58, 64 (2d Cir.1997). Employers of "live-in domestic service" employees must keep accurate records" showing the exact number of hours worked by the live-in domestic service employee[s]," including night-time interruptions and meals breaks that they work through. 29 C.F.R. Sec. 552.110(b).

2.      Here, Defendants employ "live-in domestic service" employees called Home Health Aides, a/k/a Caregivers ("HHA").  Defendants assign their HHAs to live with their clients, who require assistance caring for themselves throughout the day and night.  Defendants' HHAs perform non-exempt tasks including assisting Defendants' clients with cooking, cleaning, bathing, etc.  Defendants assign their HHAs to work 13 hour shifts each day, with three one-hour meal breaks and eight hours for sleep each day. Defendants HHAs are routinely interrupted during their scheduled mealtimes to assist Defendants' clients.  Defendants' HHAs are frequently interrupted during the night to help Defendants' clients use the restroom or turn them over in bed to prevent bedsores. Defendants' HHAs routinely fail to get five hours of uninterrupted sleep time because of these frequent interruptions.

3.      Defendants failed to record all hours worked by their HHAs.  Defendants assign their HHAs to live with their clients, knowing their work routinely occurs at all hours of the day and night.  Defendants fail to provide timesheets to their HHAs or when the timesheets were provided their HHAs, the timesheets, by design, omit spaces for HHAs to record the interruptions to their meal breaks and sleep time.  As a result, Defendants' HHAs do not record the times they are interrupted from their meals and sleep.  Defendants do not pay their HHAs overtime for the hours they spend performing that work.  Defendants have actual and constructive knowledge that their HHAs work during their meal breaks and are interrupted during their sleep time because their HHAs reported these interruptions to Defendants or because Defendants were aware of the health conditions of their customers that required care during sleep time and meal breaks. Despite these reports and Defendants' awareness of the health conditions of their

customers, Defendants never amended their timesheets so HHAs could accurately report all their hours worked.

4.      As a result, Defendants kept hundreds of thousands of dollars in wages that it should have paid to Plaintiff and the class, all in violation of state and federal wage and hour laws.

## II.      JURISDICTION AND VENUE

5.      This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

6.      This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 since they are so related to her FLSA claims that they form part of the same case or controversy.

7. Venue is proper in this district under 28 U.S.C. §§ 1391(b)-(c) because the acts or omissions giving rise to claims in this Complaint took place in this judicial district.

## III.     THE PARTIES

8.      Plaintiff, Gwendoline Aboah, is an individual residing within this judicial district.  She worked as an HHA for Defendants from approximately July 19, 2018 to December 8, 2019.

9.      Defendant Fairfield Healthcare Services, Inc. doing business as BrightStar Care of Fairfield and Southbury is a corporation organized and existing under the laws of the state of Connecticut.  Its principal place of business is located at 83 E Avenue, Norwalk, CT 06851.

10.     At all relevant times, Defendant Fairfield Healthcare Services, Inc. d/b/a BrightStar Care of Fairfield and Southbury employed, and/or continue to employ,

Plaintiff and each of the HHAs within the meaning of the FLSA and the Connecticut

Minimum Wage Act.

11.     Defendant Peter R. Moore ("Mr. Moore") is the president of Defendant

Fairfield Healthcare Services, Inc. d/b/a BrightStar Care of Fairfield and Southbury on its

Connecticut State Business Listings.

12.     As such, Defendant Mr. Moore actively manages, supervises, and directs

the day-to-day business affairs and operations of Defendant Fairfield Healthcare

Services, Inc. d/b/a BrightStar Care of Fairfield and Southbury.

13.     As president of Defendant Fairfield Healthcare Services, Inc. d/b/a

BrightStar Care of Fairfield and Southbury, Defendant Moore directly, or through his

delegates, interviewed and hired personnel, determined their rates of pay and company

policies, assigned duties and answered questions from employees regarding their pay.

14.     As such, Mr. Moore acted at all times material herein directly and

indirectly in the interest of Fairfield Healthcare Services, Inc. d/b/a BrightStar Care of

Fairfield and Southbury in relation to their employees and was, and is, therefore, an

employer of said employees within the meaning of the Fair Labor Standards Act.

15.     At all relevant times, Defendant Mr. Moore, as president of Defendant

Fairfield Healthcare Services, Inc. d/b/a BrightStar Care of Fairfield and Southbury, has

been the "ultimate responsible authority" within Fairfield Healthcare Services, Inc. d/b/a

BrightStar Care of Fairfield and Southbury "to set the hours of employment" and to "pay

wages" as to the named Plaintiff and all of Defendants' HHAs and is therefore "the

specific cause of the wage violation" alleged within the meaning of the Connecticut

Minimum Wage Act.

4

16.     At all relevant times, Defendants have been and continue to be, employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

17.     Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.

18.     Plaintiff consents in writing to be a party to this action, pursuant to 29 U.S.C.§216(b). The named Plaintiff's written consent is attached hereto and incorporated by reference.

## IV.     LEGAL PRINCIPLES

19.      Employers must pay overtime to their non-exempt workers who work over 40 hours in a work week. 29 U.S.C. Sec. 201, *et seq*.; C.G.S. Sec. 31-58, *et seq*.

20.     Employers must pay wages during an employee's meal breaks if the employee's mealtime is spent predominantly for the benefit of the employer. *Reich v. S. New Eng. Telecomms. Corp.,* 121 F.3d 58, 64 (2d Cir.1997); 29 C.F.R. Sec. 785.19 and 29 C.F.R. Sec. Sec. 525.102.

21.     Employers must pay their "live-in domestic service" employees for their entire eight-hour sleep period unless they ensure those employees get at least five hours of uninterrupted sleep time during their sleep periods.  29 C.F.R. Sec. 785.22 and 29 C.F.R. Sec. 552.102.

22.     Employers have a "non-delegable" duty under the FLSA to maintain accurate records of its employees' hours.  *Kuebel v. Black & Decker Inc*., 643 F.3d 352, 363 (2d Cir. 2011) (citing 29 U.S.C. § 211(c)); *Caserta v. Home Lines Agency, Inc.*, 273

F.2d 943, 946 (2d Cir. 1959) (Friendly, J) (employers cannot discharge their duty of accurate record keeping and appropriate payment to their employees).

23.     "[O]nce an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation simply because the employee failed to properly record or claim his overtime hours."  *Kuebel,* 643 F.3d at 363; *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 524 (2d Cir.1998).

24.     Employers are responsible for paying overtime even when employees do not accurately record their time.  *See Kuebel*, 643 F.3d at 363 ("[T]he fact that an employee is required to submit his own timesheets does not necessarily preclude him from invoking *Anderson's* standard where those records appear to be incomplete or inaccurate."); *also McGrath v. Cent. Masonry Corp*., 2009 U.S. Dist. LEXIS 94870, *17 (D. Colo. Sept. 29, 2009) ("The burden to maintain accurate records falls on the employer regardless of whether the employee is responsible for recording his own hours on a time sheet. … Indeed, the Supreme Court's reasoning in *Anderson* makes it clear that an employer should not benefit from its own failure to maintain an adequate and accurate record-keeping system.").

## V.     FACTS

25.     Defendants hired Plaintiff to work as an HHA on July 19, 2018 and she worked for Defendants until December 8, 2019.

26.     At all relevant times, Defendants have employed approximately 200 or more HHAs in Connecticut.

27.     Defendants assign their HHAs to live on-site with their clients because those clients can, and very frequently do, require assistance at any hour of the day.

28.     Defendants assign their HHAs non-exempt duties including: activities of daily living, including cooking for and serving breakfast, lunch and dinner to customer; bathing customer as needed; assisting customer change clothing and underwear/diaper during the day and night as needed; helping customer put on and take off customer's clothes every day; sitting with customer and watch customer eat food and watch television and; physically watching over customer at all times and remaining within eye and earshot of customer, including placing an electronic monitoring device in customer's room to monitor to customer at all times including at nighttime; assisting customer with incontinence; assisting customer with personal hygiene; assisting customer with taking medication and; escorting customer for medical appointments.

29.     Defendants assign their HHAs to sleep on-site so that they can help their clients with tasks including using the restroom or turn them over to prevent bed sores when needed.

30.     Defendants informed Plaintiff and all their HHAs that they were allowed eight hours of sleep time and three one-hour meal breaks per day. This schedule resulted in a minimum of thirteen hours per day of work.

31.     Over a 7-day work week, this schedule results in a minimum of 91 hours of work time (7 days x 13 hours = 91 hours), 51 of which is overtime.

32.     During her employment, Plaintiff worked during her meal breaks to provide assistance to Defendants' client who required constant monitoring.

33.     Plaintiff reported to her supervisor that she was working during her meal breaks to provide assistance to their client.

34.     Defendants improperly deducted the full 3-hours for meal breaks each 24-hour shift although Defendants knew or had constructive knowledge that Plaintiff worked through her lunch breaks to provide assistance to its clients.

35.     Plaintiff, and Defendants' other HHAs, are or were frequently interrupted during their sleep and meal breaks to care for Defendants' clients.  Defendants' clients frequently needed to be attended to during the night for such reasons as trips to the bathroom, dementia, insomnia, to monitor clients' medical device such as a ventilator or breathing machine with its oxygen tank, or if a client is in hospice, to turn them over every two hours to prevent bed sores.

36.     In fact, Defendants' clients frequently interrupted Plaintiff and other HHAs so much that they were unable to have at least five hours of uninterrupted sleep time per night. Defendants were aware of these sleep interruptions at night because Plaintiff and other HHAs, from time to time, informed Defendants of these interruptions. But Defendants never modified its time sheets or took any other steps to accurately record all hours worked by Plaintiff and other HHAs.

37.     Defendants improperly deducted the full 8-hours for sleep time each 24-hour shift although Defendants knew or had constructive knowledge that Plaintiff's sleep was so frequently interrupted to provide assistance to Defendants' clients that she rarely, if ever, got five consecutive hours of uninterrupted sleep during the night.

38.     Defendants failed to ensure that they accurately recorded all the work their HHAs, including Plaintiff, performed during their meal breaks and when their sleep time was interrupted to care for their clients.

39.     Defendants provided Plaintiff and all HHAs with a time sheet to record their hours worked.

40.     However, Defendants did not include a place on their timesheets for their HHAs to record their meal break and sleep interruptions.

41.     As a result, Plaintiff, and Defendants' other Connecticut HHAs, did not have a place to record all their hours worked, and did not include the interruptions to their meal breaks and sleep time.

42.     For example, during the workweek of November 5, 2018 to November 11, 2018, Plaintiff worked as a live-in HHA for all seven days of the week. According to her assigned schedule, she worked seven 24-hour shifts, totaling 168 hours that week. Defendant paid her $1,176.65 for only 91-hours of her work that week.

43.     During the workweek of November 5, 2018 to November 11, 2018, Plaintiff's sleep was so frequently interrupted that Plaintiff did not get up to 5-hours of sleep during each of the 24-hour shift worked that week.

44.     Defendants did not pay Plaintiff for any of the 8-hours of sleep time for each of the 24-hour shift she worked that week, although Defendants knew or had constructive knowledge that Defendants' customer woke up Plaintiff up so frequently at night, every night, such that Plaintiff did not get up to 5-hours of sleep during each of the 24-hour shift worked.  Defendants owe Plaintiff an additional sum of $121.20 for each shift of 24-hours for interruptions to her sleep time at nighttime.

45.     During the week of November 5, 2018 to November 11, 2018, Plaintiff worked through her meal breaks assisting Defendants' customer, who required constant monitoring due to her severe health conditions.

9

46.     Defendants did not pay Plaintiff for any of the 3-hours of meal breaks for each of the 24-hour shift she worked that week, although Plaintiff worked through her meal breaks during each of the seven 24-shifts that week. Defendants owe Plaintiff an additional sum of $45.45 for each shift of 24-hours that she worked though her meal breaks

47.     As a result, Defendants knowingly and willfully failed to pay Plaintiff and the other HHAs the full wages that they were due and instead retained those wages for their own use and benefit.

48.     The Defendants and Plaintiff agreed that the statute of limitations will be tolled for Aboah and other HHAs from May 15, 2020 until either the Defendants or Plaintiff informed the other party that the tolling period ceased.  As of the date of filing this complaint, the Defendants have not informed Plaintiff that the tolling period ceased, and therefore, the claims of Plaintiff and the other HHAs are tolled from May 15, 2020 until the present.

49.     The ordinary statute of limitations of a claim under the FLSA is two years, except that a cause of action arising out of a willful violation of the statute can be brought within three years.  29 U.S.C. Sec. 255(a).

50.     However, courts can equitably toll Sec. 255(a) to avoid "inequitable circumstances."  *Darowski v. Wojewoda*, 2017 U.S. Dist. LEXIS 208122, *14 (D. Conn. Dec. 19, 2017) (quoting *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996)).

51.     Defendants, as employers under the FLSA, are required by 29 C.F.R. § 516.4 "to post and keep posted a notice explaining the Act, as prescribed by the Wage

and Hour Division, in conspicuous places in every establishment where such employees are employed so as to permit them to observe readily a copy." *Id*.

52.     Defendants failed to post or keep posted such notice required by 29 C.F.R. § 516.4 in conspicuous places where Plaintiff, Aboah and other HHAs were employed to permit her to observe readily a copy.

53.     Accordingly, the FLSA claims of Aboah and the other HHAs are subject to equitable tolling, and is not limited to May 15, 2017.

54.     Employers must, under Connecticut law, hang required wage and hour posters where their employees can see them, or otherwise have access to them.  C.G.S. § 31-66.

55.     When employers fail to provide posters for their workers, informing them of their rights under the CMWA, equitable tolling is appropriate until the Plaintiff seeks the advice of counsel or learns of their rights some other way.  *Asp*, 573 F. Supp. 2d at 697-98; *Rescia*, 2015 U.S. Dist. LEXIS 191706 at *6; *Darowski*, 2017 U.S. Dist. LEXIS 208122 at *17; *Lin*, 2011 U.S. Dist. LEXIS 132025 at *14.

56.     Also, Defendants, as employers under the CMWA, and subject to a minimum fair wage order, are required to "keep a copy of such order and the regulations issued by the Labor Commissioner posted at the place of employment where it can be read easily by the employees [and] furnish copies of orders and regulations on request, without charge." C.G.S. § 31-66.

57.     Defendants failed to post or distribute to Aboah and other HHAs, such minimum wage order and regulations issued by the Labor Commissioner.

58.     Defendants failed to send Aboah and other HHAs, an email containing such minimum wage order and regulation issued by the Labor Commissioner so that she could learn her rights to overtime.

59.     Aboah and other HHAs did not learn about her rights to collect overtime until she consulted with an attorney.

60.     Accordingly, the CMWA claims of Aboah and the other HHAs are subject to equitable tolling, and are not limited to May 15, 2018.

## VI.     THE COLLECTIVE ACTION

61. Plaintiff brings Counts One and Three on behalf of herself and all other HHAs Defendants employed in Connecticut during the period of May 15, 2017 until the date of final judgment in this matter who Defendants assigned to "live" with their clients.

62. Plaintiff brings this count under 29 U.S.C. § 216(b) of the Fair Labor Standards Act. Plaintiff and the other HHAs are similarly situated in that they are all subject to Defendants' common plan or practice of requiring them to live on the premises of their clients because they needed assistance at all hours, and failing to provide them with time sheets designed to accurately record their interruptions to ensure they were correctly paid for all their work.

## VII.     THE CONNECTICUT RULE 23 CLASS

63. Plaintiff brings Counts Two and Four under the Connecticut Wage Act, C.G.S. §§ 31-58 *et seq*., and Rule 23 of the Federal Rules of Civil Procedure, for herself and on behalf of a class consisting of all "live-in" HHAs Defendants employed in Connecticut during the period of May 15, 2018 until the date of final judgment in this matter who worked at least one week for Defendants.

64.     Class certification for these Connecticut law claims is appropriate under Fed. R. Civ. P. 23 (a) and Fed. R. Civ. P. 23 (b)(3) because all the requirements of the Rules are met.

65.     The class is so numerous that joinder of all members is impracticable. Upon information and belief, Defendants employed approximately 200 HHAs who worked at least one 24-hours overnight shift in Connecticut during the past two (2) years.

66.     There are questions of law and fact common to the class, including whether the putative class members worked overtime but were not paid overtime in violation of Connecticut law.

67.     The named Plaintiff's claims are typical of those of the class members. Plaintiff's claims encompass the challenged practices and course of conduct of Defendants. Furthermore, Plaintiff's legal claims are based on the same legal theories as the claims of the putative class members. The legal issues as to which federal and state laws are violated by such conduct apply equally to Plaintiff and to the class.

68.     The named Plaintiff will fairly and adequately protect the interests of the class. The Plaintiff's claims are not antagonistic to those of the putative class and she has hired counsel skilled in the prosecution of class actions.

69.     Common questions of law and fact predominate over questions affecting only individuals, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. This proposed class action under Fed. R. Civ. P. 23 presents few management difficulties, conserves the resources of the parties and the court system, protects the rights of each class member and maximizes recovery to them.

**VIII.   LEGAL CLAIMS**

**COUNT ONE:**     *Gwendoline Aboah, individually and on behalf of others similarly situated v. Fairfield Healthcare Services, Inc. d/b/a BrightStar Care of Fairfield and Southbury***: VIOLATION OF THE FAIR LABOR STANDARDS ACT, 21 U.S.C. Section 201,** *et seq.*

70.     Based on the foregoing, Defendant Fairfield Healthcare Services, Inc. d/b/a BrightStar Care of Fairfield and Southbury's conduct in this regard was a willful violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*

71.     Plaintiff and all other similarly situated HHAs who opt into this litigation are entitled to compensation for all overtime hours worked, liquidated damages, attorneys' fees and court costs.

**COUNT TWO:**     *Gwendoline Aboah, individually and on behalf of others similarly situated v. Fairfield Healthcare Services, Inc. d/b/a BrightStar Care of Fairfield and Southbury:* **VIOLATION OF THE CONNECTICUT WAGE ACT, C.G.S. Section 31-58,** *et seq.*

72.     Based on the foregoing, Defendant Fairfield Healthcare Services, Inc. d/b/a BrightStar Care of Fairfield and Southbury's conduct in this regard was a violation of the Connecticut Wage Act, C.G.S. §§ 31-58, *et seq.*

73.     Accordingly, Plaintiff and all other HHAs in Connecticut are entitled to compensation for all overtime hours worked, penalty damages, interest, attorneys' fees and court costs.

**COUNT THREE:**     *Gwendoline Aboah, individually and on behalf of others similarly situated v. Peter R. Moore***:  VIOLATION OF THE FAIR LABOR STARDARDS ACT, 21 U.S.C. Section 201,** *et seq.*

74.     Based on the foregoing, Defendant Peter R. Moore's conduct in this regard was a violation of Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*

75.     As president of Fairfield Healthcare Services, Inc. d/b/a BrightStar Care of Fairfield and Southbury, he is the "ultimate responsible authority" and the cause for these violations.

76.     Defendant Peter R. Moore is liable to Plaintiff, and all other similarly situated HHAs who opt into this litigation for compensation for all overtime hours worked, liquidated damages, attorneys' fees, and court costs.

**COUNT FOUR:**          ***Gwendoline Aboah, individually and on behalf of others similarly situated v. Peter R. Moore:* VIOLATION OF THE CONNECTICUT WAGE ACT, C.G.S. section 31-58, *et seq.***

77.     Based on the foregoing, Defendant Peter R. Moore's conduct in this regard was a violation of the Connecticut Wage Act, C.G.S. §§ 31-58, *et seq.*

78.     As president of Fairfield Healthcare Services, Inc. d/b/a BrightStar Care of Fairfield and Southbury, he is the "ultimate responsible authority" and the cause for these violations.

79.     Defendant Peter R. Moore is liable to Plaintiff, and all other HHAs for compensation for all overtime hours worked, penalty damages, interest, attorneys' fees, and court costs.

## DEMAND FOR RELIEF

Plaintiff claims:

a. Designation of this action as a collective action pursuant to the FLSA and prompt issuance of notice pursuant to 29 U.S.C. § 216(b);

b. Certification of the Connecticut class action pursuant to Fed. R. Civ. P. 23(b)(3) and the appointment of Plaintiff and her counsel to represent those classes;

c. An award of unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 216(b);

d. An award of unpaid overtime wages under the Connecticut Wage Act, C.G.S. § 31-68;

e. An award of liquidated damages under the Fair Labor Standards Act, 29 U.S.C. § 216(b);

f. An award of penalty damages under Connecticut Wage Act, C.G.S. § 31-68;

g. Attorneys' fees under the Fair Labor Standards Act, 29 U.S.C. § 216(b);

h. Attorneys' fees under the Connecticut Wage Act, C.G.S. § 31-68;

i. Interests and costs;

j. Injunctive relief in the form of an order directing Defendant to comply with the Connecticut Wage Act; and

k. Such other relief as in law or equity may pertain.

## **JURY DEMAND**

Plaintiff demands a trial by jury by all issues so triable.

> Gwendoline Aboah, individually and on
> behalf of other similarly situated individuals

> By: //s// ct05114
> Nitor V. Egbarin, ct05114
> Law Office of Nitor V. Egbarin, LLC
> 100 Pearl Street, 14th Floor
> Hartford, CT  06103-3007
> Tel: (860) 249-7180
> Fax: (860) 408-1471
> E-mail: NEgbarin@aol.com