# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **Gwendoline Aboah, individually, and on behalf of others similarly situated** | : | **CIVIL ACTION NO.:** |
| | : | |
| **Plaintiff** | : | **3:20-cv-00763 (MPS)** |
| | : | |
| **V.** | : | |
| | : | |
| **Fairfield Healthcare Services, Inc. d/b/a BrightStar Care of Fairfield & Southbury and Peter R. Moore,** | : | **September 25, 2020** |
| | : | |
| **Defendants** | : | |

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S CONSENT MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

LAW OFFICE OF NITOR V. EGBARIN, LLC
Nitor V. Egbarin, Esq. (ct05114)
*Attorney for Plaintiff*, Individually and on Behalf of All
Other Persons Similarly Situated
100 Pear Street, 14th Floor
Hartford, CT 06103-3007
negbarin@aol.com
nitoregbarin@gmail.com
Tel: 860-249-7180
FAX: 860-408-1471

# TABLE OF CONTENTS

TABLE OF CONTENTS…….................................................................................. ii

TABLE OF AUTHORITIES………………….....………………….... iii

I.     INTRODUCTION ………………….................................................... 1
II.    BACKGROUND OF CASE AND SETTLEMENT…... ………...... 2
III.   PROPOSED SETTLEMENT........................................................... 4
       1. Settlement Amount…….…………………………...... 4

       2. Settlement Class…......................................................... 4

       3. Release of Claims………………….……………….…… 5

       4. Class Settlement Allocation………. …………….…… 5

       5. Service Award for Named Plaintiff …..……………… 6

       6. Attorney's Fees, Costs and Expenses...........................… 6

IV.   PRELIMINARY SETTLEMENT APPROVAL……………………… … 7

       1. Proposed Settlement Class Should Be Certified…………..…. 7

       2. Plaintiff's Counsel Should Be Appointed As
         Class Counsel………………………………………....…. 15

       3. Criteria for Determination of Preliminary Approval………… 15

V.    PROPOSED PLAN OF NOTICE TO CLASS MEMBERS...………………. 19

VI.   CONCLUSION ………………………………………………..………... 22

# TABLE OF AUTHORITIES

**CASES**                                                                                      **PAGE**

*Abramovitz v. Ahern, 96 F.R.D. 208, 212 (D. Conn. 1982)*…………………………   9

*Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997)*……………………….   7,8,14

*Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79,*
*238 F.R.D. 82 (S.D.N.Y. 2006)* …………………………………………………………   7

*Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 207 (2d Cir. 2015)*……..   16

*Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483*
*(2d Cir. N.Y. 1995).* …………………………………………………………………   10

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.,*
*502 F.3d 91, 104 (2d Cir.2007)*……………………………………………………...   9

*Denney v. Jenkens & Gilchrist, 230 F.R.D. 317, 347 (S.D.N.Y 2005)*…………   7

*Denny v. BDO Seidman, LLP, 412 F.3d 58 (2d Cir. 2005).*…………………………   7

*Detroit v. Grinnell Corp., 495 F.2d 448, 456 (2d Cir. 1974).* ………………………   17

*Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 175-76 (1974).* ………………………   19

*Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1217 (11th Cir. 2001)*………..   8

*Hoffmann-LaRoche, Inc. v. Sperling, 493 U.S. 165, 170 (1989).* …………………   8

*Hypolite v. Health Care Servs. of New York Inc.,*
*256 F. Supp. 3d 485, 489 (S.D.N.Y) 2017).*………………………………………   11,12

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,*
*No. 05MD1720MKBJO, 2019 WL 6875472, at *31*
*(E.D.N.Y. Dec. 16, 2019)*..................................................................   9

*In re Petrobras Sec., 862 F.3d 250, 269 (2d Cir. 2017)*…………………………   10

*In re Visa Check/Mastermoney Antitrust Litig., 280 F.3d 124, 132-33*
*(2d Cir. 2001)*...................................................................................   7,13

*In re Wells Fargo Home Mortg. Overtime Pay Litig., 571 F.3d 953, 958*
*(9th Cir.2009*………………………………………………………………………   9

*Maywalt v. Parker & Parsley Petroleum Co., 67[1]F.3d 1072, 1079*

*(2d Cir. 1995)*.............................................................................................. 17

*Moore v. PaineWebber, Inc.,* 306 F.3d 1247, 1252 (2d Cir.2002)............... 9,12

*Mullins v. Direct Digital, LLC,* 795 F.3d 654, 662 (7th Cir. 2015)……..... 10

*Myers v. Hertz Corp.,* 624 F.3d 537, 547–48 (2d Cir. 2010)....................... 8,9,11

*Philadelphia Housing Authority v. American Radiator &*
*Standard Sanitary Corp.,* 323 F. Supp. 364, 372 (E.D. Pa. 1970)…………. 17

*Rappaport v. Katz,* 62 F.R.D. 512, 513 (S.D.N.Y.1974)……………………. 9

*Robidoux v. Celani,* 987 F.2d 931 (2d Cir. 1993)…………………………… 10

*Russell v. Broder & Orland, LLC,* No. 3:17-CV-1237 (VAB),
*2018 WL 3104101, at \*4 (D. Conn. June 22, 2018)*…………………………. 16

*Saylor v. Lindsley,* 456 F.2d 896, 904 (2d Cir. 1972)………………………. 17

*Smelser v. Martin's Famous Pastry Shoppe, Inc.,*
*No. 3:17-CV-01813 (MPS), 2019 WL 3006539, at \*1*
*(D. Conn. July 10, 2019)*……………………………………………………… 16

*Soberal-Perez v. Heckler,* 717 F.2d 36, 43 (2d Cir. 1983)…………………. 20

*Spann v. AOL Time Warner, Inc.,* 02 Civ. 8238, 2005 U.S. Dist.
*LEXIS 10848, at \*27 (S.D.N.Y. June 7, 2005)*……………………………….. 18

*Wal-Mart Stores, Inc. v. Visa U.S.A Inc.,* 396 F.3d 96, 117
*(2d Cir. 2005)*………………………………………………………………… 17,20,21

*Weinberger v. Kendrick,* 698 F.2d 61, 70 (2d Cir. 1982)............................ 20,21

**STATUTES**

29 U.S.C. § 216 ………………………… ……………………………..... passim

C.G.S. § 31-66 .......................................................................................... passim

C.G.S. § 31-68 .......................................................................................... passim

G.S. § 31-76 .............................................................................................. passim

**CODE OF FEDERAL REGULATIONS** [11]

29 C.F.R. § 552.110....……………………………………………….... passim

29 C.F.R. § 785.19....……………………………………………... passim

29 C.F.R. § 785.22....……………………………………………... passim

**FEDERAL RULES OF CIVIL PROCEDURE**

RULE 23 …….………………………........…............……….…... passim

11

Under Rule 23(e) of the Federal Rules of Civil Procedure and Section 216 of the Fair Labor Standards Act, the Named Plaintiff GWENDOLINE ABOAH ("Ms. Aboah" or "Plaintiff" or "The Named Plaintiff") applies to this Court for preliminary approval of a proposed settlement in this wage and hour class and collective action, as set forth below. Defendants FAIRFIELD HEALTHCARE SERVICES, INC., D/B/A BRIGHTSTAR CARE OF FAIRFIELD & SOUTHBURY, ("BRIGHTSTAR") and PETER R. MOORE ("Mr. MOORE"), (both Defendants are collectively referred to as "Defendants"), consent to this motion.

## I.    <u>INTRODUCTION.</u>

Plaintiff alleges that Defendants failed to properly compensate her and all other home health aides ("HHAs") for all hours worked, including hours worked during meal periods or sleep time, in violation of the Fair Labor Standards Act ("FLSA"), 20 U.S.C. § 201 *et seq*. and the Connecticut Minimum Wage Act (CMWA).  Plaintiff and Defendants have agreed to settle this hybrid Rule 23 class and FLSA collective action for the significant monetary relief of $302,000.00.

The Court should preliminarily approve the Parties' proposed settlement agreement because it is fair, reasonable, and adequate under the governing legal standards and provides reasonable monetary compensation to the Plaintiffs.  The Parties respectfully request the Court (1) grant preliminary approval of the proposed Class and Collective Settlement Agreement ("Settlement Agreement"), attached as Exhibit 1, and plan of settlement administration therein; (2) approve the proposed Notice of Proposed Settlement of  Class and Collective Action Lawsuit ("Settlement Notice" and the Exclusion Form ("Opt-Out Form"), attached to the Settlement Agreement as Exhibit --; (3) authorize mailing of the Settlement Notice in the manner set forth in the Settlement Agreement; (4) schedule a final approval hearing approximately -- days after the date of the preliminary approval; and (5) enter the [Proposed] Order Certifying Class for

1

Settlement Purposes Only, Granting Preliminary Approval of Class and Collective Action Settlement, attached as Exhibit -- and filed contemporaneously herewith.

## II. **BACKGROUND OF THE CASE AND THE SETTLEMENT.**

### A. **Procedural History**

On June 2, 2020, Named Plaintiff filed a putative class and collective action Complaint in the United States District Court for the District of Connecticut (the "Court") (the "Complaint"), captioned *Gwendoline Aboah v. Fairfield Healthcare Services, Inc., d/b/a BrightStar Care of Fairfield & Southbury and Peter R. Moore,* (20-cv-00763) (the "Lawsuit"). The Lawsuit asserted class claims under the Connecticut Minimum Wage Act, Conn. Gen. Stat. § 31-68, ("CMWA") and collective claims under the Fair Labor Standards Act, 29 U.S.C. § 216(b), ("FLSA") alleging, inter alia, that the Defendants failed to pay her and other home health aides (collectively "HHAs") who worked 24-hour live-in shifts all of their wages due under the CMWA and the FLSA for interruptions to sleep and meal periods, and sought recovery of unpaid wages, liquidated damages, interest, and attorneys' fees and costs (the "Claims").

Named Plaintiff sought to represent herself and similarly situated HHAs as a collective action under the FLSA and a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure with regard to the CMWA claims. Although Defendants have not filed their Answer, which was not due at the time of settlement, they deny any liability, wrongdoing, or legal violations of any kind related to the claims and contentions asserted by Plaintiff. Defendants maintain that Plaintiff and all HHAs were properly paid for all of their work hours and that no additional compensation of any kind is owed to them. Nonetheless, Defendants agree to settle the claims asserted in the Lawsuit on the terms and conditions set forth in the Settlement Agreement to avoid the burden and expense of continued litigation.

2

## B. **Discovery Completed**.

The Parties conducted extensive informal discovery and case analysis including; (a) the production of voluminous business and payroll records relating to the 24-hour shifts worked by and amounts paid to the Named Plaintiff and the exemplars of Settlement Class Members during their employment with BrightStar during the Class Period and Collective Period; (b) the review of Defendants' written policies and procedures; (c) comprehensive data analysis by Plaintiff's undisclosed expert; and (e) comprehensive investigation by counsel regarding applicable law as applied to the facts discovered regarding the alleged claims and defenses. BrightStar and the Named Plaintiff, through her counsel, each analyzed BrightStar's business and payroll records relating to the Named Plaintiff's and the Settlement Class's claims asserted in the Lawsuit.

## C. **Settlement Negotiations**.

The Parties agreed to engage in early mediation in the case the deadline for filing their Answer, before initiating formal discovery, and before any substantive issues were decided. On July 31, 2020, the Parties attended a full-day mediation overseen by private mediator Attorney Daniel A. Schwartz of Shipman & Goodwin, LLP ("Mediator"). The Parties reached agreement on the material terms during that session and further participated in two additional sessions with the Mediator to finalize calculations in line with the terms of the settlement, which are contained in the Settlement Agreement. This settlement provides for substantial monetary relief for Named Plaintiff and 188 Class Members for a Class and Collective period spanning three years. The Rule 23 Settlement Class is defined as all current and former HHAs employed by Defendants who worked one or more 24-hour live-in shifts anytime from May 15, 2018 to May 17, 2020 ("Class Period"). The FLSA Collective is defined as all current and former HHAs employed by Defendants who worked one or more 24-hour live-in shifts anytime from May 15, 2017 to May

14, 2018 ("Collective Period").  The time period of May 15, 2017 to May 14, 2018 is the Third-Year Period.  Together, the  Rule 23 Settlement  Class Members and the Third-Year Settlement Class Members are "Settlement Class Members."

III.    **SUMMARY OF THE PROPOSED SETTLEMENT TERMS**

The terms of this settlement are contained in the Settlement Agreement, attached as Exhibit --.  Named Plaintiff and Defendant entered into a separate confidential settlement in which Plaintiff released all non-wage claims relating to her employment with Defendants and the separation of her employment with Defendants.  That agreement is not subject to Court approval.  There are no undisclosed side agreements between the Named Plaintiff and Defendants.

1.    **The Settlement Amount.**

To avoid the time and expense of continued litigation and risks and delays inherent in continuing the litigation, the Parties arrived a settlement in the gross Total Settlement Amount of $302,000.00. See Section 5 of the Settlement Agreement. The Total Settlement Amount covers (a) all attorneys' fees and litigation costs in connection with all of Class Counsel's representation of Named Plaintiff and the Settlement Class Members, including all attorneys' fees and costs that may arise in the future in connection with this Settlement Agreement, including without limitation, seeking Court approval of the Settlement Agreement and the notice process; (b) all payments to the Settlement Class Members; and (c) a service payment to the Named Plaintiff ("Service Award").  Any unclaimed funds resulting from uncashed checks will be donated to a *cy pres:* Bridgeport Rescue Mission. See Section 8 of the Settlement Agreement.

2.    **Eligible Class Members**

The only action required by the Settlement Class to receive a settlement payment is to submit current Form W-4 and W-9 forms either via mail or email.  Unless they opt-out, all

individuals employed by Defendants as HHAs in Connecticut during the Class Period and/or the Collective Period who worked at least one live-in 24-hour shift are eligible for a settlement payment. See Section 2 of the Settlement Agreement.

3.    **Release**

The Settlement Agreement provides that, upon entry of an order approving the settlement by the Court, the Named Plaintiff and Class Members who have not validly and timely opted-out of the settlement will release all state, local, and common law wage and hour claims. In addition, Class Members who timely negotiate their settlement checks will consent to join the collective action and release all wage and hour claims under the FLSA. See Section 7 of the Settlement Agreement.

4.    **Allocation Formula**

The distribution of the settlement funds is based on work activity and timekeeping data produced by Defendants. The Net Settlement Amount distributed to the Class members is $166,747.72. For the Class Period, the formula uses the number of Covered Shifts worked by an HHA during the relevant time and settlement funds were allocated to the Named Plaintiff and each Class member on a proportionate basis based on the number of Covered Shifts worked during the Class Period. During the Class Period, 188 Class Members worked 20,045 Covered Shifts. There are 95 members of the Third-Year Settlement Class (some of whom are also members of the Rule 23 Settlement Class). A "Covered Shift" refers to a 24-hour live-in shift worked by a current or former live-in home health aide ("Live-in HHAs") employed by Defendants during the Class Period for which the Live-in HHA was paid for 13 hours of work time.

For the Third-Year Period, each person who worked a Covered Shift will receive a gross payment of $50.000. The balance of the Net Settlement Amount, $161,997.72 ("Rule 23

Settlement Fund") is allocated to the Rule 23 Settlement Class. Each Rule 23 Settlement Class Member will receive a proportionate share of the Rule 23 Settlement Fund ("Individual Rule 23 Class Payment"). The individual Rule 23 Class Payments will be calculated by dividing the total number of Covered Shifts attributed to the individual member during the Class Period divided by all Covered Shifts during the Class Period worked by the Class, multiplied by the Rule 23 Settlement Fund. Otherwise stated, the formula for how an Individual Rule 23 Class Payment is: (Number of individual Covered Shifts $\div$ 20,045) x \$161,997.72. Members. See Section 9 of the Settlement Agreement. See Section 9 of the Settlement Agreement.

After arm's length negotiation, settlement amounts were reached. The settlement finally reached was reached as a compromise. The Settlement is fair because it constitutes a reasonable estimate of the overtime owed to the Plaintiff Class, and it accounts for the risks that the Named Plaintiff and the Class faced in light of defenses raised by Defendants.

**5. Service Award to Named Plaintiff**

Plaintiff will apply for Court approval, and Defendants will not oppose, distribution of a Service Award to the Named Plaintiff paid out of the Total Settlement Amount that does not exceed \$15,000.00, as payment for her efforts on behalf of the class, including assisting Class Counsel with the prosecution of the Lawsuit and attending the mediation. See Section 10 of the Settlement Agreement.

**6.     Attorneys' Fees and Litigation Costs**

 Pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), along with their Motion for Final Approval of the Settlement, Class Counsel will seek, and Defendants will not oppose, an award of attorneys' fees and costs of 33.33% of the Total Settlement Amount, or \$100,666.67, in addition to \$19,585.61 for reimbursement of reasonable litigation costs expended.  The Parties

agree that these sums are fair and reasonable in light of all the facts and circumstances, including the past and anticipated future time spent by Class Counsel, their hourly rates, the risks undertaken, and the results achieved. See Section 10 of the Settlement Agreement.

**7.      Settlement Administrator**

The Parties have agreed that Class Counsel will serve as Settlement Administrator.  Class Counsel will not be awarded any fees for serving as Settlement Administrator. See Section 6 of the Settlement Agreement.

**IV.    <u>PRELIMINARY SETTLEMENT APPROVAL.</u>**

**1.    <u>The Proposed Settlement Class Should Be Certified</u>**

Prior to granting preliminary approval of a settlement, the Court should determine that the proposed settlement class is a proper class for settlement purposes. See Manual for Complex Litigation, Fourth § 21.632; *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997). See also *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 347 (S.D.N.Y 2005) ("Courts have frequently certified settlement classes on a preliminary basis, at the same time as the preliminary approval of the fairness of the settlement, and solely for the purposes of settlement, deferring final certification of the class until after the fairness hearing.") rev'd on other grounds, *Denny v. BDO Seidman, LLP*, 412 F.3d 58 (2d Cir. 2005).

The Court can certify a class where plaintiffs demonstrate that the proposed class and proposed class representatives meet the prerequisites in Rule 23(a) – numerosity, commonality, typicality and adequacy of representation – and one of the three requirements of Rule 23 (b). Fed. R. Civ. P. 23; *In re Visa Check/Mastermoney Antitrust Litig.,* 280 F.3d 124, 132-33 (2d Cir. 2001) superseded by statute on other grounds as noted in *Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79,* 238 F.R.D. 82 (S.D.N.Y. 2006).

Certification of a class action for damages requires a showing that "questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

In certifying a settlement class, the Court is not required to determine whether the action, if tried, would present intractable management problems. *Amchem Prods.,* 521 U.S. at 620; see Fed. R. Civ. P. 23 (b)(3). Rather, the Court has great discretion in determining whether to certify a class. *Amchem*, 521 U.S. at 624.

Additionally, an employee alleging violations of the FLSA may bring an action on behalf of all "other similarly situated employees." 29 U.S.C. § 216(b). Collective actions benefit the judicial system by enabling the "efficient resolution in one proceeding of common issues of law and fact," and by providing plaintiffs with the opportunity to "lower individual costs to vindicate rights by pooling of resources." *Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989). The FLSA's "collective action" provision allows one or more employees to bring an action for overtime compensation on "behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b); *Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208, 1217 (11th Cir. 2001).

Plaintiff has met all of the prerequisites Under Rule 23(a) and Section 216 of the Fair Labor Standards Act. In *Myers v. Hertz Corp.,* 624 F.3d 537, 547–48 (2d Cir. 2010), the Second Circuit explained that:

> Rule 23 requires that a proposed class action (1) be sufficiently numerous, (2) involve questions of law or fact common to the class, (3) involve class plaintiffs whose claims are typical of those of the class, and (4) involve a class representative or representatives who adequately represent the interests of the class. See Fed.R.Civ.P. 23(a). Moreover, Rule 23(b)(3), which would govern the proposed

class action here, requires the party seeking certification to show that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that class treatment would be superior to individual litigation. Fed.R.Civ.P. 23(b)(3). The "predominance" requirement of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." [*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)]. The requirement's purpose is to "ensure[ ] that the class will be certified only when it would 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.' " *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc*., 502 F.3d 91, 104 (2d Cir.2007) (alteration omitted) (quoting *Amchem*, 521 U.S. at 615, 117 S.Ct. 2231). Therefore the requirement is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.,* 306 F.3d 1247, 1252 (2d Cir.2002); see also *In re Wells Fargo Home Mortg. Overtime Pay Litig.,* 571 F.3d 953, 958 (9th Cir.2009) (noting that it is "the relationship between \*548 the common and individual issues" that the requirement examines (internal quotation marks omitted))."

"Rule 23(b)(3) requires that the district court determine what questions of law or fact are common to the members of the class." *Cordes*, 502 F.3d at 106 (internal quotation marks and alteration omitted)." *Myers v. Hertz Corp*., 624 F.3d at 548.

### a. The Requirement of Class Definition is Satisfied.

The Class is defined as "all current and former live-in home health aides (Live-in HHAs) employed by Defendants and who worked one or more 24-hour live-in shift and who are identified on Exhibit A ("Settlement Class Members") anytime from May 15, 2018 to May 17, 2020 ("Class Period")." See Section 2 of the Settlement Agreement.

Plaintiff's class definition is precise and unambiguous. See, *Abramovitz v. Ahern*, 96 F.R.D. 208, 212 (D. Conn. 1982) citing, *Rappaport v. Katz*, 62 F.R.D. 512, 513 (S.D.N.Y.1974). Also see, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* No. 05MD1720MKBJO, 2019 WL 6875472, at \*31 (E.D.N.Y. Dec. 16, 2019) (class as defined is not

"truly indeterminable." *Petrobras* specifically distinguished the Second Circuit's approach from the "heightened ascertainability test" found in other circuits, noting that ascertainability presents only a "modest threshold" that "does not concern itself with the plaintiffs' ability to offer proof of membership under a given class definition." *In re Petrobras Sec.,* 862 F.3d 250, 269 (2d Cir. 2017); cf. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 662 (7th Cir. 2015) (describing those courts that have adopted a heightened ascertainability requirement, and noting that "some courts have used this requirement to erect a nearly insurmountable hurdle at the class certification stage in situations where a class action is the only viable way to pursue valid but small individual claims").).

Plaintiff has also satisfied the numerosity, commonality, typicality and adequacy of representation requirements under Rule 23(a) and Section 216 of the Fair Labor Standards Act.

### b. The Requirement of Numerosity is Satisfied.

 A potential class of forty (40) members is generally presumed sufficiently numerous. See *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. N.Y. 1995). The Rule 23 Settlement Class contains a group of  139 employees of Defendants (See Exhibit A to the Settlement Agreement). The Settlement Class is so numerous that joinder of all Settlement Class members is impractical. See Fed. R. Civ. P. 23(a)(1). *Robidoux v. Celani,* 987 F.2d 931 (2d Cir. 1993) ("Rule 23(a) requires a finding that the numerosity makes joinder of all class members 'impracticable,'" and "courts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement.").

The class action also satisfies the numerosity requirement; Defendants have provided a class list of  the alleged 139 Live-in HHAs who worked at least one 24-Hour Live-in shift as employee of Defendants between May 17, 2018 to May 15, 2020.  Relevant to the FLSA claim only, there are 95 Live-in HHAs who worked 8,825 Covered Shifts in the Third-Year Period.  Of

those 95, 49 only worked Covered Shifts in the Third-Year Period.

   c.   <u>*The Requirement of Commonality is Satisfied.*</u>

There are several questions of law and fact common to the Settlement Class. Among these questions are:

   i.   Whether Defendants failed to pay overtime wages on or between May 15, 2017 and May 17, 2020, when Defendants allegedly did not make, keep, and preserve a record showing the exact number of hours worked by the Caregivers as required under 29 C.F.R. § 552.110 and C.G.S. § 31-66 and then failed to pay the Caregivers for these hours as required under 29 C.F.R. § 785.19.

   ii.  Whether, if Plaintiffs establish Defendants violated the law, such violation was made in good faith, and Defendants had reasonable grounds for believing that any such act or omission was not a violation of the FLSA or CMWA.

   iii. Whether Defendants are liable for any of the damages claimed in the Complaint including, but not limited to: compensatory and liquidated damages, interest, costs, disbursements attorneys' fees, and litigation costs and expenses.

The plaintiff need only make a "modest factual-showing that she and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." *Myers v. Hertz Corp.,* 624 F.3d at 555 (citations and internal quotation marks omitted). *Hypolite v. Health Care Servs. of New York Inc*., 256 F. Supp. 3d 485, 489 (S.D.N.Y. 2017).

If the plaintiff demonstrates at the first stage of certification that "similarly situated"

employees exist, the Court will conditionally certify the class, order that appropriate notice be given to putative class members, and the action will continue as a "collective action throughout the discovery process (Citation omitted). At the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted-in are in fact 'similarly situated' to the named plaintiffs. See, *Hypolite v. Health Care Servs. of New York Inc*., 256 F. Supp. 3d at 489.

Here, Plaintiff "can show that "some" of the above questions can be answered with respect to the members of the class as a whole "through generalized proof" and that those common issues are "more substantial" than individual ones, *Moore*, 306 F.3d at 1252." *Myers v. Hertz Corp*., 624 F.3d at 549.

### d. *The Requirement of Typicality is Satisfied.*

Plaintiff's claims are typical of those of the Settlement Class because, like all Settlement Class Members, they are/were employed by Defendants and claim violations of state and federal labor laws. See Fed. R. Civ. P. 23(a)(3). Plaintiff alleges Defendants had a policy or practice of not making, keeping and preserving accurate records of all the hours the Live-in HHAs worked, including any work required to be performed during their meal and sleep periods due to occasional interruptions by their clients. Additionally, Plaintiff claims Defendants did not pay the Plaintiff and other Live-in HHAs for any unrecorded work performed during meal and sleep periods that were otherwise properly excluded from hours worked under state and federal law.

### e. *The Requirement of Adequate Representation is Satisfied.*

Plaintiff and Class Counsel have fairly and adequately represented and protected the interests of all Settlement Class Members. Moreover, Plaintiff has no interests antagonistic to Settlement Class Members. Class Counsel conducted a thorough pre-filing and continuing

investigation, vigorously prosecuted the lawsuit, and negotiated a settlement through Attorney Daniel A. Schwartz of Shipman & Goodwin, LLP ("Mediator") and the mediation was held on July 31, 2020 at 11:30 a.m. ending the same day at 9:10 p.m., ("Mediation"), with the Parties settling the Lawsuit, the terms of which are contained in this Agreement. See Section 1 of the Settlement Agreement. The settlement reach at the mediation provides prompt and valuable relief to Settlement Class Members.

The representative parties will fairly and adequately protect the interest of the class.

The Court Should Certify The Settlement Class Under Rule 23(b)(3) and Section 216 of the Fair Labor Standards Act. Preliminary certification is appropriate because, as set forth above, Plaintiffs have satisfied the predominance and superiority requirements under Rule 23(b)(3).

### f.   *The Requirement of Predominance is Satisfied.*

Questions of law or fact common to the class members predominate over any questions affecting only individual members. Here again, all the Live-in HHAs worked, whether at night time or during meal break and Defendants' policy or practice did not make, keep and preserve accurate records of all these hours. And, Defendants did not pay the Plaintiff and other Caregivers for these hours which Defendants failed to accurately record.

Specifically, the questions of law and fact common to all Settlement Class Members are described above. These common questions predominate over any individual issues. See *In re Visa Check/Mastermoney Antitrust Litig.,* 280 F.3d at 139 ("Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues.").

Defendants employed Plaintiff and other class members, as live-in aides and would work 24-hour shifts. A live-in employee who works full time for one client … is scheduled for a 13-

hour day each day, from 7:00 a.m. until 8:00 p.m. 29 C.F.R. § 785.19 provides "(a) Bona fide meal periods. Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating."

Here, Defendants are alleged to not provide bona fide meal periods to their Live-in HHAs during the period each Live-in HHA was scheduled for a 13-hour day each day, from 7:00 a.m. until 8:00 p.m. This is a uniform practice for all class members since Defendants allegedly required all Live-in HHAs to work "each day, from 7:00 a.m. until 8:00 p.m.", thus allegedly not allowing them meal periods during that schedule. This common practice which is alleged to violate 29 C.F.R. § 785.19, predominates over any individual issues of liability.

g. *The Requirement of Superiority is Satisfied.*

Finally, a class action is superior to other available methods for fairly and efficiently adjudicating class members' claims and "achieve economies of time, effort, and expense and promote uniformity of decision action and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc. v. Windsor*, supra, 521 U.S. 615.

Additionally, a class action is clearly superior to other available methods for the fair and efficient adjudication of the controversy because joinder of all Settlement Class Members is impracticable. Moreover, as the damages allegedly suffered by individual members of the

Settlement Class may be relatively small, the expense and burden of individual litigation would make it impossible for all Settlement Class Members to individually redress the alleged harm done to them.

In sum, the Court should certify the class and collective for settlement and the Court should grant this motion for preliminary approval of the settlement agreement.

### 2. The Court Should Appoint Plaintiffs' Counsel As Class Counsel.

Under Rule 23, "a court that certifies a class must appoint class counsel …….[who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(A), (B). In making this determination, the Court must consider counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(C).

As identified in his biography presented to the Court, Plaintiff's Counsel has experience in handling the types of claims asserted in the case. Plaintiff's Counsel also has some experience in litigating class actions and collective actions pursuant to the FLSA. See the biography of the Law Office of Nitor V. Egbarin, LLC attached as **Exhibit 2** to the Egbarin Declaration.

 Counsel has diligently investigated, prosecuted, and settled this lawsuit, dedicated substantial resources to the investigation and prosecution of the claims at issue in the lawsuit, and demonstrated his knowledge of the state and federal labor laws at issue.

Therefore, the Court should appoint Plaintiff's Counsel to serve as Class Counsel for the Settlement Class as well pursuant to Rule 23(g).

### 3. Criteria To Be Considered In Deciding Preliminary Approval.

After certifying the Settlement Class, the Court should turn its attention to preliminarily

approving the settlement. The Court must "make a preliminary determination of the fairness, reasonableness, and adequacy of the settlement terms." Manual for Complex Litigation, Fourth, § 21.633. The primary question raised by a request for preliminary approval is whether the proposed settlement is "within the range of reasonableness." Id. § 40.42.

> The Fair Labor Standards act is "a uniquely protective statute." *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 207 (2d Cir. 2015). The Second Circuit has therefore required that district courts review and approve settlements in FLSA actions before they may take effect. See *id.* at 206 ("Thus, Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect."). Applying the principles in *Cheeks,* district courts in the Second Circuit consider a non-exclusive set of five factors in evaluating whether a FLSA settlement is fair and reasonable:

> In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Russell v. Broder & Orland, LLC*, No. 3:17-CV-1237 (VAB), 2018 WL 3104101, at *4 (D. Conn. June 22, 2018) (quotation marks omitted). *Smelser v. Martin's Famous Pastry Shoppe, Inc.*, 2019 WL 3006539, at *1.

Preliminary approval does not require the district court to answer the ultimate question of whether a proposed settlement is fair, reasonable, and adequate. Rather, that decision is made only at the final approval stage, after notice of the settlement has been given to the class members and they have had an opportunity to voice their views of the settlement or to exclude themselves from the settlement. See 3 BJ Moore, Moore's Federal Practice paragraph 23.80[2.-1], at 23-479 (2d ed. 1993);

Preliminary approval is merely the prerequisite to giving notice so that "the proposed

settlement . . . may be submitted to members of the prospective class for their acceptance or rejection." *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.,* 323 F. Supp. 364, 372 (E.D. Pa. 1970).

It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions." *Wal-Mart Stores, Inc. v. Visa U.S.A Inc.,* 396 F.3d 96, 117 (2d Cir. 2005) (quoting 4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11:41, at 87 (4th ed. 2002)). In considering a potential settlement, the trial court need not reach any ultimate conclusions on the substantive factual or legal issues of plaintiff's claims. See *Detroit v. Grinnell Corp.,* 495 F.2d 448, 456 (2d Cir. 1974). "We recognize that since 'the very purpose of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation', the court must not turn the settlement hearing 'into a trial or a rehearsal of the trial'; and that the court 'is concerned with the likelihood of success or failure and ought, therefore, to avoid any actual determination or the merits.'" *Saylor v. Lindsley*, 456 F.2d 896, 904 (2d Cir. 1972). "In determining whether a proposed settlement is fair, reasonable, and adequate, the primary concern is with the substantive terms of the settlement: Basic to this … is the need to compare the terms of the compromise with the likely rewards of litigation." *Maywalt v. Parker & Parsley Petroleum Co.,* 67 F.3d 1072, 1079 (2d Cir. 1995) (internal quotations omitted).

The proposed settlement here is the product of extensive, arm's-length negotiations conducted with a third party competent mediator. Th mediated negotiations followed Defendants' production of significant amounts of information and records. Based on their familiarity with the factual and legal issues, the parties were able to negotiate a fair settlement, taking into account the costs and risks of continued litigation. The negotiations were at all times hard-fought and at arm's length, and produced a result that the settling parties believe to be in their respective best interests.

The proposed settlement has no obvious deficiencies. The settlement provides the representative plaintiff an incentive award of $15,000 because of her participation in this matter as lead plaintiff, including her participation in a lengthy mediation session. This payment is reasonable in light of the overall benefit conferred on the Settlement Class. See, e.g., *Spann v. AOL Time Warner, Inc.,* 02 Civ. 8238, 2005 U.S. Dist. LEXIS 10848, at *27 (S.D.N.Y. June 7, 2005) (granting incentive award of $10,000 per plaintiff on class action settlement).

Finally, the settlement does not mandate excessive compensation for Plaintiffs' Counsel. At the final fairness hearing, Class Counsel will apply for a fee of 33.33% of the Total Settlement Amount as attorneys' fees. These fees will compensate Class Counsel for the many hours they spent working on the litigation; the significant risks they assumed on behalf of the Settlement Class on a fully contingent basis; and the highly favorable result they achieved for the class. Furthermore, Plaintiff's lodestar is 104,636.25 which is a little less than the amount of the requested fee which demonstrates that the fee is reasonable. See **Exhibit 3** attached to Egbarin Declaration**.**

The Settlement falls within the range of possible approval. Defendants provided Plaintiff with a class list of 139 live-in HHA who worked 20,045 shifts during a 2-year period from May 15, 2018 to May 17, 2020.  Plaintiff demanded damages for interruptions to their meal and sleep periods which are otherwise properly excluded as work hours at the overtime rate for each of those 20,045 shifts. Based on the Total Settlement Amount, this provides recovery to the class of $14.83 ($302,000 – $4,750, divided by 20,045) per shift for the Class Period. This is a reasonable compromise amount, based on the disputed nature of the claims.

During the Third-Year Period (which is only at-issue if Plaintiff can establish a willful violation of the FLSA), 95 HHAs worked one or more Covered Shift.  As explained above, the proposed Settlement was reached only after protracted arm's-length negotiations between the

parties and the Mediator and Plaintiff's and Defendants' Counsel, all of whom considered the advantages and disadvantages of continued litigation.

Plaintiff's Counsel believes this settlement achieves all of the objectives of the litigation, namely a monetary settlement to Class Members, and Collective Action Members, currently or formerly employed by Defendants to compensate them for Defendants' alleged failure to pay them for all of their hours worked.

Plaintiff's Counsel, with a great deal of experience in the prosecution and resolution of unpaid wage claims, has carefully evaluated the merits of this case and the proposed settlement.

Even if the matter were to proceed to trial, Plaintiff's Counsel acknowledges, based on past, real-world experience, that the apparent strength of a Plaintiffs' case is no guarantee against a defense verdict. Furthermore, even if a judgment were obtained against Defendants at trial, the relief might be no greater, and indeed might be less, than that provided by the proposed Settlement.

In light of the above considerations, the proposed settlement as a whole falls within the range of possible final approval. The Court should therefore grant preliminary approval of the settlement and direct that notice of it be given to the Settlement Class.

## V.     THE PROPOSED PLAN OF CLASS NOTICE.

Rule 23 (c)(2)(B) provides, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); see also *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-76 (1974). Rule 23(e)(B) similarly says, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(B).

The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness. *Wal-Mart Stores*, 396 F.3d at 113 (citing *Soberal-Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir. 1983)); Fed. R. Civ. P. 23(e). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Id*. at 114 (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982)). Notice is "adequate if it may be understood by the average class member." 4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11:53, at 167 (4th ed. 2002).

Here, the parties propose that Thirty (30) days after Preliminary Approval (or within an alternate period set by the Court), Class Counsel as Claims Administrator will mail the Notice Packet via First Class United States mail, postage prepaid, to each Class Member. Unless otherwise ordered by the Court, the Notice of Settlement will be in the form attached as Exhibit C and the Exclusion Form will be in the form attached as Exhibit D. Within twenty (20) days of the date of the initial mailing, Class Counsel as Claims Administrator shall promptly conduct a second mailing for any Settlement Class Member whose Notice Packet is returned as undelivered and for whom a forwarding address is provided by the U.S. Postal Service or through skip-tracing. If, after this second mailing, the Notice Packet is again returned as undelivered, then the notice mailing process shall end for that Settlement Class Member. Class Counsel as Claims Administrator shall not attempt more than two (2) mailings of the Notice Packet to any Settlement Class Member, and no mailing shall occur more than sixty (60) days after the first mailing to Class Members. See Section 13b of the Settlement Agreement.

The proposed methods of notice comport with Rule 23, Section 216 of the Fair Labor Standards Act, and the requirements of due process. Mailing constitutes reasonable notice because those persons whose notices are returned because their addresses cannot be identified will be automatically excluded from the Class. As for the content of the notice, Rule 23(c)(2)(B) provides:

The notice [to a Rule 23(b)(3) class] must concisely and clearly state in plain, easily understood language:

- the nature of the action,

- the definition of the class certified,

- the class claims, issues, or defenses,

- that a class member may enter an appearance through Counsel if the member so desires,

- that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and

- the binding effect of a class judgment on class members under Rule 23(c)(3).

Where notice is being sent in connection with a proposed settlement, "the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart*, 396 F.3d at 114 (quoting Weinberger, 698 F.2d at 70).

The proposed notice of this class and collective action settlement which is attached to the Settlement Agreement as **Exhibit C** ("the Notice"), comports with the above-cited legal authorities in all respects. To that end, the proposed Notice: (1) describes the nature, history, and status of the

litigation; (2) sets forth a clear definition of the proposed Settlement Class; (3) states the class claims and issues; (4) clearly provides that Settlement Class Members may enter an appearance through their own counsel; (5) discloses the right of the people who fall within the definition of the Settlement Class to exclude themselves from the Settlement, and specifies the deadline and procedure for doing so; and (6) warns of the binding effect of the settlement approval proceedings on those persons who remain in the Settlement Class. In addition, the Notice clearly describes the terms of settlement, and the relief available to Settlement Class Members.

The Notice also provides clear notice that Plaintiff's Counsel seeks compensation in the form of a payment for fees, costs and expenses, and the named plaintiffs' incentive bonuses.

Finally, the Notice also provides contact information for Class Counsel; summarizes the reasons the parties are proposing the settlement; discloses the date, time and place of the formal Fairness Hearing; and describes the procedures for commenting on the settlement and appearing at the Fairness Hearing. The Notice contents therefore satisfy all applicable requirements. Therefore, in granting preliminary settlement approval, the Court should also approve the parties' proposed form and method of giving notice to the Settlement Class.

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully ask that the Court to grant preliminary approval of the proposed settlement and enter the proposed Preliminary Order in connection with Settlement Proceedings, submitted herewith.

Respectfully submitted,

GWENDOLYN ABOAH, individually, and on behalf of all others similarly situated,

By:_____ct05114)_____

Nitor V. Egbarin, Esq., (ct05114)
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Tel: 860-249-7180
Fax: 860-408-1471
Mobile: 860-680-1448
Email: NEgbarin@aol.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 25, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

By: */s/Nitor V. Egbarin*
Nitor V. Egbarin