# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| Gwendoline Aboah, individually, and on behalf of others similarly situated<br><br>**Plaintiffs**<br><br>V.<br><br>Fairfield Healthcare Services, Inc. d/b/a BrightStar Care of Fairfield & Southbury and Peter R. Moore,<br><br>**Defendants** | CIVIL ACTION NO.:<br><br>3:20-cv-00763 (MPS)<br><br><br><br>September 25, 2020 |

## DECLARATION OF NITOR V. EGBARIN IN SUPPORT OF PLAINTIFF'S APPLICATION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

NITOR V. EGBARIN, an attorney duly admitted to practice law before the Courts of the State of Connecticut, hereby declares under penalties of perjury under the laws of the United States of America that the following is true:

1. I, NITOR V. EGBARIN, ESQ., am the managing principal of the Law Office of Nitor V. Egbarin, LLC, 100 Pearl Street, 14th Floor, Hartford, CT. 06013, which represents Plaintiffs and other persons similarly situated in the above referenced action. I submit this declaration in support of Plaintiff's motion for preliminary approval of the class and collective action settlement. The Law Office of Nitor V. Egbarin, LLC ("Egbarin Law Office") has extensive experience prosecuting FLSA and CMWA cases and is qualified to represent the Plaintiff and the members of the putative class. I have attached here my curriculum vitae as **Exhibit 2**. The Egbarin Law Office has no interest adverse to the class.

2. Plaintiff, GWENDOLINE ABOAH ("Named Plaintiff"), was a live-in home health aide, a/k/a caregiver who worked for Defendants from about July 19, 2018 until about December 8, 2019. She commenced the Litigation by filing a complaint in the United States District Court for the District of Connecticut on June 2, 2020, in which Plaintiff asserted claims under the Fair Labor Standards Act of 1938 ("FLSA"), § 201, et seq., 29 U.S.C. § 216(b), and the Connecticut Minimum Wage Act, Conn. Gen. Stat. § 31-68 ("CMWA"), claiming failure to pay overtime for work performed during the 24 hours shifts during sleeping periods and meal periods.

3. Prior to entering into the Settlement Agreement at the Mediation, Plaintiffs' Counsel received and analyzed voluminous business and payroll records relating to the 24-hour shifts worked by and amounts paid to the Named Plaintiff and the exemplars of Settlement Class Members during their employment with BrightStar during the Class Period. BrightStar and the Named Plaintiff, through her counsel, each analyzed BrightStar's business and payroll records relating to the Named Plaintiff's and the Settlement Class's claims asserted in the Lawsuit. On the basis of the aforementioned business and payroll records, and its analysis thereof, Class Counsel is satisfied that he has a sufficient basis to properly value the claims as alleged in the Lawsuit. The Parties engaged in the Mediation in an effort to reach a resolution of Named Plaintiffs' and the Settlement Class Members' claims in order to avoid prolonged and expensive litigation. Based upon Class Counsel's analysis and Mediator's counter-analysis, of the payroll data and related information and documents produced by BrightStar relating to the Settlement Class who worked at least one Covered Shift during the Class Period, the applicable law, and recognizing the risks of continued

litigation, including the risk that the Named Plaintiff and Settlement Class Members might obtain a recovery less favorable than, and/or comparable to, the recovery embodied in this Agreement, and that any recovery may not be obtained for several years, if at all, Class Counsel is satisfied that upon consideration of these factors, and others, that it is in the best interest of Plaintiff and the Class Members to settle the Action on the terms described herein, and that such Settlement is fair, reasonable and adequate to the Class.

4. Plaintiff's Counsel believes that if the Action were not settled, and (1) the Court certified Class, (2) and the Action proceeded to trial, and (3) the individual named Plaintiff, and the Class Members prevailed on every claim and contention asserted, the recovery by judgment could be greater than the recovery under the Settlement. However, Plaintiff's Counsel considered that there was a substantial risk that, if the Action proceeded, Plaintiffs and the Class Members might not have prevailed on any or all of their claims. Plaintiffs' Counsel also considered the likelihood that Defendants would appeal any adverse rulings, which would, at a minimum, substantially delay any recovery and present a risk that such rulings would be reversed in Defendants' favor. Plaintiffs' Counsel also considered the risk that Defendants might not have the assets to satisfy a class judgment.

5. Defendants deny all allegations of wrongdoing or liability whatsoever. Defendants desire to settle and terminate all existing or potential claims against them, which were, or could have been, asserted in the Action, without in any way acknowledging any fault or liability, in order to eliminate the expense and uncertainty of protracted litigation. The Settlement Agreement is not, and shall not be construed or be

deemed to be, evidence or an admission or a concession on the part of Defendants of any fault or liability or damages whatsoever, and Defendants do not concede any infirmity in the defenses which it has asserted or could have asserted in the Action.

6. The sum of damages, if any, which Plaintiff could prove on her behalf, or on behalf of the Class Members was also a matter of dispute. The Settlement's provisions do not constitute a finding, admission or concession of the existence, extent or measure of damages. No determination has been made by the Court as to liability or the amount, if any, of damages incurred by the Class, nor on the proper measure of any such damages. The determination of damages, like the determination of liability, is a complicated and uncertain process. The Settlement herein will provide an immediate and substantial benefit, and avoids the risks that liability or damages might not be proved at trial, as well as the risk that class and collective might be decertified.

7. The parties engaged in substantial informal discovery and prepared separate Position Statements and *Ex Parte* Memorandum of Law, which along with financial report and exhibits were filed with the Mediator, to resolve this case. Defendants produced several hundreds of pages of documents to Plaintiffs to facilitate Mediation settlement negotiations.

8. The material produced and reviewed included review hundreds of relevant employment pay records, timesheets, care plans and email communication, for the work Plaintiff and class members performed during the Class Period.

9. The parties in this action have each conducted separate investigations with respect to the claims and defenses made in this action.

**Mediation Settlement Negotiations**

10. The parties engaged in informal discovery and internal investigations regarding the merits of the claims of the Collective and Class Action Members, as well as the claims under the CMWA.

11. The parties further engaged in arm's-length settlement negotiations in the course of the Mediation on Friday, July 31, 2020 from 11:30 a.m. to 9:10 p.m., involving numerous offers and counteroffers.

12. As a result of those negotiations, the Parties agreed to settle the claims of the Collective and Class of persons employed as home health aide employees, according to the terms and conditions set forth in the Settlement Agreement, subject to the Court's consideration and approval. See copy of the Settlement Agreement attached as **Exhibit 1.**

13. In Plaintiffs' Counsel's estimation, the settlement is in the best interest of the class as explained in the Brief in Support of Preliminary approval of the Settlement.

14. The Parties signed the Settlement Agreement as of September 25, 2020.

15. The Settlement Agreement is fair and reasonable.

## **SETTLEMENT – TERMS**

16. Defendants agree to pay a total settlement amount of $302,000.00 to settle the claims of the Class and the Named Plaintiff. The payment amounts shall be allocated as described in the Settlement Agreement (See **Exhibits A** and **B** to the Settlement Agreement) and shall be paid in one lump sum as described in Section I and are allocated to Plaintiffs in proportionate share of the Settlement Amount, based on the ratio of a Class Member's full 24 hour shift worked in any workweek, relative to the total number of all such full 24 hour shifts for all Class Members.

17. After arm's length negotiation, settlement amounts were reached. The settlement finally reached was achieved as a compromise. The Settlement is fair because it constitutes a reasonable estimate of the overtime owed to the Plaintiff Class, and it accounts for the risks that the Named Plaintiff and the Class faced in light of defenses raised by Defendants.

18. The Settlement falls within the range of possible approval. Defendants provided Plaintiff with a class list of live-in HHAs who worked several thousands of shifts during a 3-year period from May 15, 2017 to May 17, 2020. Plaintiff demanded damages for interruptions to meal breaks and for sleep time for each class member. The parties settled for $302,000 for all class members to be allocated based on the number of live-in shifts worked by each class member. The proposed Settlement was reached only after protracted arm's- length negotiations between the parties and the Mediator and Plaintiff's and Defendants' Counsel, all of whom considered the advantages and disadvantages of continued litigation.

**Additional Payment for the Named Plaintiff**

19. Defendants agree to pay the sum of $15,000 to the Named Plaintiff GWENDOLINE ABOAH, in one lump sum, as an incentive award for her services as the class representative in this action and the aid she provided to Class Counsel in the Litigation.

20. Defendants also agree to settle the Named Plaintiff's non-wage claims in exchange for a full release of all her other non-wage claims relating to her employment with BrightStar.

21. The resolution of the non-wage claims was to conclude all claims that

might be outstanding between Named Plaintiff and BrightStar and such resolution is not an admission of liability on the part of Defendants.

**Payment of Attorneys' Fees, Costs and Expenses**

22. Plaintiff's Counsel seeks an award of $100,666.67 (33.33% of the $302,000.00 Settlement Amount) and an award of $19,587.61 for his costs and expenses already incurred in this Litigation. The fee and expenses will be paid in one lump sum just as the Settlement will be paid. The payment will be deemed to compensate Plaintiffs' Counsel for all work and cost remaining to be performed or incurred in documenting the Settlement, implementing the terms thereof with regard to notice, securing Final District Court Approval, ensuring the Settlement is fairly administered and implemented, obtaining dismissal of the Litigation with prejudice, and potentially defending against any appeals.

23. Plaintiff or Plaintiff's Counsel shall not seek attorneys' fees or reimbursement of costs or expenses related to this Litigation from Defendants other than those contained in the Settlement Agreement. These amounts will be paid to Plaintiffs' Counsel if the Court approves the fairness of the Settlement. Defendants have agreed to pay these fees and expenses. See Section 10 of the Settlement Agreement.

24. This amount is reasonable as Plaintiff has incurred expenses of $19,587.61 related to filing of the complaint and the serving of the complaint, financial expert fee in preparing financial report used in the Mediation, Plaintiff's portion of the Mediator's fee and mailing of class notices. Plaintiffs' Counsel has spent 209.03 hours working on the case and anticipates spending another 70 more hours in administering class and responding to questions and to complete final approval papers and appear

at the final hearing. I have attached here my contemporaneous time sheet with my costs and, my fee agreement as **Exhibits 3 & 4**, respectively. I have also attached here the litigation expense records of the financial expert as **Exhibits 5 & 6**, respectively.

25. My regular hourly rate is $375 per hour and thus my lodestar is 279.03-hours times $375 per hour which equals $104,636.25. The requested fee of 1/3 contingency of $100,666.67 is reasonable as it is less than a multiple of one of the lodestar.

26. Release of Claims Is limited to the wage claims as a Class and which are settled here.

27. In return for the above consideration, the Named Plaintiff and the Class Action Members who have received notice of the settlement and have not chosen to opt out ("Settlement Class Members"), will release only their claims for overtime pay during the period on or between May 15, 2017 and May 17, 2020.

**Defendants' Limited Right to Withdrawal from Settlement**

28. The Settlement Agreement may be terminated by any party (a) if the Court declines to approve the Settlement Agreement or any material term of the Settlement Agreement or (b) if the claims of Plaintiffs who opt-out of the Settlement exceed $75,000.

**Conclusion**

29. Thus, these settlement terms are fair, reasonable and adequate.

30. I have attached a proposed order providing for preliminary approval of the class settlement and notice. This proposed order is also attached as **Exhibit. 7** to the Settlement Agreement.

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the forgoing is true and correct.

Dated: Hartford, Connecticut

September 25, 2020

By: */s/ Nitor V. Egbarin*
Nitor V. Egbarin, ct05114
Law Office of Nitor V. Egbarin, LLC
100 Pearl Street, 14th Floor
Hartford, CT 06103-3007