UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GWENDOLINE ABOAH and TANIA STEWART, | ) ) | 3:20-CV-00763 (SVN) |
|    *Plaintiffs*, | ) ) | |
| v. | ) ) | |
| FAIRFIELD HEALTHCARE SERVICES, INC. d/b/a BRIGHTSTAR CARE OF FAIRFIELD & SOUTHBURY and PETER R. MOORE, | ) ) ) ) ) | September 23, 2022 |
|    *Defendants*. | ) | |

### RULING AND ORDER ON DEFENDANTS' MOTION TO DISMISS

Sarala V. Nagala, United States District Judge.

Plaintiffs Gwendoline Aboah and Tania Stewart, who were employed as live-in home health aides by Defendant Fairfield Healthcare Services, Inc., d/b/a BrightStar Care of Fairfield & Southbury ("BrightStar") (together with Defendant Peter R. Moore, "Defendants"), have brought this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Connecticut Minimum Wage Act ("CMWA"), Conn. Gen. Stat. § 31-58 *et seq.* Plaintiffs allege, individually and on behalf of all others similarly situated, that Defendants failed to accurately record hours worked by their employees and failed to properly compensate the employees for overtime.

Defendants seek to dismiss Plaintiffs' action, claiming that Plaintiffs have failed to state a claim upon which relief can be granted. Specifically, Defendants dispute the validity of a U.S. Department of Labor ("DOL") rule providing that third party employers may not avail themselves of the so called "companionship" and "live-in" exemptions from the FLSA's minimum wage and overtime requirements (the "2015 Rule"). Defendants contend that, because the 2015 Rule constitutes an unreasonable interpretation of the exemptions, it is entitled to no deference under

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), and, as a result, the Court should interpret the exemptions on its own to find that they apply to third party employers such as Defendants. Plaintiffs argue that, because the 2015 Rule should be upheld as a reasonable interpretation of the exemptions, Defendants are not exempt from the FLSA's minimum wage and overtime requirements.

For the reasons described below, the Court agrees with Plaintiffs. Accordingly, Defendants' motion to dismiss Plaintiffs' Second Amended Complaint is denied.

## I. FACTUAL BACKGROUND

Plaintiffs' Second Amended Complaint ("SAC"), ECF No. 69, alleges the following facts, which the Court accepts as true for purposes of Defendants' motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Defendants employ domestic service employees who perform services of a household nature in private homes. SAC ¶¶ 3, 48. These employees, who are referred to as home health aides ("HHAs"), assist clients with tasks such as cooking, cleaning, bathing, dressing, feeding, and toileting, and provide medication reminders, fall risk prevention, and other safety services. *Id.* ¶¶ 3, 51. Defendants assign HHAs to live with Defendants' clients, who require assistance caring for themselves throughout the day and night. *Id.* ¶¶ 3, 50. Plaintiff Aboah worked for Defendants as a live-in HHA from July of 2018 until December of 2019, *id.* ¶¶ 20, 46, and Plaintiff Stewart worked for Defendants as a live-in HHA from June of 2018 until July of 2020, *id.* ¶¶ 21, 47.

Defendants require their live-in HHAs to work from early in the morning until late in the evening without any bona fide meal breaks or regularly scheduled sleeping periods. *Id.* ¶¶ 3–4, 49, 52–54, 59. When the HHAs do attempt to take meal and sleep breaks, they are frequently interrupted by clients. *Id.* ¶ 62. Despite these interruptions, when calculating Plaintiffs' wages

and overtime, Defendants excluded three hours of meal breaks and an eight-hour sleeping period from each twenty-four-shift the HHAs worked. *Id.* ¶¶ 60–61. Moreover, although HHAs routinely fail to get five hours of uninterrupted sleep, Defendants failed to properly instruct the HHAs to record interruptions to their sleep. *Id.* ¶¶ 9, 55–57, 67. As a result, the HHAs did not record all the hours they worked. *Id.* ¶ 67. Accordingly, Plaintiffs assert that Defendants have failed to properly count the HHAs' hours and to adequately compensate the HHAs for overtime. *Id.* ¶¶ 7, 58.

Plaintiffs further assert that, although Defendants furnish food and lodging to their HHAs, they have failed to provide any records of the value of such food or lodging. *Id.* ¶¶ 14–15, 82–83. According to Plaintiffs, the value of this food and lodging should have been included in the HHAs' regular rate of pay for purposes of calculating the HHAs' overtime rate. *Id.* ¶¶ 14–16. Plaintiffs contend that, as a result of Defendants' failure to provide the food and lodging records, Defendants have withheld hundreds of thousands of dollars in wages that should have been paid to Plaintiffs and other HHAs, in violation of state and federal wage and hours laws. *Id.* ¶ 16.

Based on the foregoing facts, Plaintiffs allege that Defendants have violated the FLSA and the CMWA in various ways. First, Plaintiffs allege that Defendants' practice of requiring HHAs to work long shifts without bona fide meal and sleeping periods violates the CMWA. *Id.* ¶ 4. Second, Plaintiffs allege that, because Defendants did not provide Plaintiffs and other HHAs with bona fide meal and sleeping periods, federal regulations did not permit Defendants to exclude any such periods from the hours the HHAs worked during each twenty-four-hour period. *Id.* ¶¶ 5–6, 58. Third, Plaintiffs allege that Defendants violated federal regulations by failing to include the value of the food and lodging they provided to HHAs in the HHAs' regular rate of pay when calculating the HHAs' overtime rate. *Id.* ¶¶ 14–16.

II.     PROCEDURAL BACKGROUND

Plaintiff Aboah initiated this action by filing a complaint in June of 2020. ECF No. 1. Early in the case, the parties proposed a settlement, but United States District Judge Michael P. Shea rejected the settlement proposal. ECF No. 18. In April of 2021, Plaintiffs filed an amended complaint that added Plaintiff Stewart to this action. ECF No. 30. Defendants subsequently moved to partially dismiss Plaintiffs' amended complaint. ECF No. 35. Before the Court issued a ruling on Defendants' partial motion to dismiss, Plaintiffs filed a motion for leave to file a proposed second amended complaint, ECF No. 48, a motion for conditional certification of FLSA collective, ECF No. 50, and a motion for class certification pursuant to Federal Rule of Civil Procedure 23, ECF No. 52. This case was subsequently transferred to the undersigned, and after hearing oral argument, the Court granted Plaintiffs' motion for leave to amend and permitted Plaintiffs to file their SAC. ECF Nos. 66, 69. Defendants responded to the SAC by filing a second motion to dismiss, ECF No. 70, which mooted the partial motion to dismiss Defendants had previously filed, *see* ECF No. 71. Defendants' second motion to dismiss is the subject of this ruling.

III.    LEGAL STANDARD

A.  Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

4

678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* However, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not suffice. *Id.* (citing *Twombly*, 550 U.S. at 555). In reviewing a motion to dismiss, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).

### B. Judicial Review of Agency Action

Generally, when Congress authorizes an agency to issue regulations and the agency promulgates a regulation interpreting a statute it enforces, the interpretation is entitled to deference if the statute is ambiguous and if the agency's interpretation is reasonable. *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 220 (2016) (hereinafter *Encino I*). Courts implement this principle through the two-step analysis set forth in *Chevron*, 467 U.S. at 842–43. At the first step of the *Chevron* analysis, a court must determine whether Congress has "directly spoken to the precise question at issue." *Id.* at 842. If so, then that is the end of the matter because "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43. If, however, Congress has not directly addressed the precise question at issue, then the court "does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation." *Id.* at 843 (footnote omitted). Instead, the court must defer to the agency's interpretation if it is reasonable. *Id.* at 844.

One premise underlying *Chevron* is that "when Congress grants an agency the authority to administer a statute by issuing regulations with the force of law, it presumes the agency will use

that authority to resolve ambiguities in the statutory scheme." *Encino I*, 579 U.S. at 220 (citing *Chevron*, 467 U.S. at 843–44, and *United States v. Mead Corp.*, 533 U.S. 218, 229–30 (2001)). Congress's decision to authorize an agency to proceed through notice-and-comment rulemaking serves as a "very good indicator" that Congress intended the regulation to carry the force of law, and that *Chevron* should apply. *Id.* (quoting *Mead Corp.*, 533 U.S. at 229–30). However, a regulation is not entitled to *Chevron* deference where it is "procedurally defective"—that is, "where the agency errs by failing to follow the correct procedures in issuing the regulation." *Id.* (quoting *Mead Corp.*, 533 U.S. at 227). A rulemaking process is procedurally defective where an agency does not "give adequate reasons for its decisions." *Id.* at 221. In other words, the agency's explanation must be "clear enough that its 'path may reasonably be discerned.'" *Id.* (quoting *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)). If the agency has failed to provide that minimal level of analysis, its action is arbitrary and capricious and cannot carry the force of law. *Id.*

Additionally, agencies may change their existing policies, provided they "provide a reasoned explanation for the change." *Encino I*, 579 U.S. at 221 (citing *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981–82 (2005)). In doing so, the agency "need not always provide a more detailed justification than what would suffice for a new policy created on a blank slate." *Id.* (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)). However, the agency must at least "display awareness that it is changing position," "show that there are good reasons for the new policy," and "be cognizant that longstanding policies may have 'engendered serious reliance interests that must be taken into account.'" *Id.* at 221–22 (quoting *Fox*, 556 U.S. at 515). Accordingly, an "unexplained inconsistency" in agency policy provides "a reason for holding an interpretation to be an arbitrary and capricious change from agency practice."

*Id.* at 222 (quoting *Brand X*, 545 U.S. at 981). Such an arbitrary and capricious regulation is unlawful and is entitled to no deference. *Id.*

## IV. DISCUSSION

For purposes of the present motion, Defendants do not dispute that they are third party employers within the meaning of the 2015 Rule. Instead, Defendants argue that the 2015 Rule, which provides that the companionship and live-in exemptions do not apply to third party employers, is invalid. Accordingly, Defendants' dismissal arguments hinge on the validity of the 2015 Rule, and if the Court finds the 2015 Rule to be valid, then Defendants' arguments must fail.[1] For the reasons below, the Court finds that the 2015 Rule is entitled to *Chevron* deference and therefore rejects Defendants' invitation to invalidate it. As a result, Defendants' motion to dismiss is denied.

### A. Background Regarding Relevant Exemptions

As a preliminary matter, Defendants' arguments for dismissal can only be properly understood in the context of the complex history of the FLSA's companionship and live-in exemptions. Accordingly, the Court turns first to a discussion of the legislative and regulatory foundations of these exemptions.

Sections 206 and 207 of the FLSA provide various minimum wage and maximum hours requirements for certain employees. 29 U.S.C. §§ 206–07. In 1974, Congress passed amendments to the FLSA that extended the Act's minimum wage and overtime protections to employees who provide service in a household, also known as "domestic service." 29 U.S.C. §§ 206(f), 207(*l*);

---

[1] Defendants raise, via footnote, the argument that Plaintiffs' "recordkeeping claim" should be dismissed because there is no private right of action for a recordkeeping violation under the FLSA. *See* ECF No. 70-1 at 12 n.6 (citing *Lopez v. Tri-State Drywall, Inc.*, 861 F. Supp. 2d 533, 537 (E.D. Pa. 2012)). However, drawing all inferences in favor of Plaintiffs, it appears that the SAC's allegations regarding Defendants' purported recordkeeping failures do not simply constitute a standalone recordkeeping claim, but, rather, support Plaintiffs' claims regarding Defendants' alleged failures to properly count Plaintiffs' hours and adequately compensate Plaintiffs. As a result, and because Defendants did not fully brief this argument, the Court will decline to dismiss any portion of the SAC on this ground.

*see Home Care Ass'n of Am. v. Weil*, 799 F.3d 1084, 1087 (D.C. Cir. 2015) (hereafter *Weil II*), *cert. denied*, 136 S. Ct. 2506 (2016). The congressional committee reports accompanying the 1974 amendments explained that domestic service "includes services performed by persons employed as cooks, butlers, valets, maids, housekeepers, governesses, janitors, laundresses, caretakers, handymen, gardeners, footmen, grooms, and chauffeurs of automobiles for family use." *Weil II*, 799 F.3d at 1087–88 (quoting S. Rep. No. 93-690, at 20 (1974), and H.R. Rep. No. 93–913, at 35–36 (1974)).

Sections 213 and 214 of the FLSA provide various exemptions from the Act's minimum wage and maximum hours requirements, two of which are relevant to Defendants' pending motion to dismiss. *See* 29 U.S.C. §§ 213–14. First, the "companionship exemption" provides that:

> The provisions of sections 206 (except subsection (d) in the case of paragraph (1) of this subsection) and 207 of this title shall not apply with respect to . . . any employee employed on a casual basis in domestic service employment to provide babysitting services or any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)[.]

*Id.* § 213(a)(15). "Companionship services" are defined as "the provision of fellowship and protection[2] for an elderly person or person with an illness, injury, or disability who requires assistance in caring for himself or herself." 29 C.F.R. § 552.6(a). Second, the "live-in exemption" provides that "[t]he provisions of section 207 of this title shall not apply with respect to . . . any employee who is employed in domestic service in a household and who resides in such household."

---

[2] For purposes of this definition, "provision of fellowship" means "to engage the person in social, physical, and mental activities, such as conversation, reading, games, crafts, or accompanying the person on walks, on errands, to appointments, or to social events." 29 C.F.R. § 552.6(a). "Provision of protection" means "to be present with the person in his or her home or to accompany the person when outside of the home to monitor the person's safety and well-being." *Id.*

29 U.S.C. § 213(b)(21).  The DOL defines a "live-in" worker as one who resides on his or her employer's premises permanently or for an extended period of time.  29 C.F.R. §§ 552.102, 785.23.

In 1975, the DOL promulgated regulations implementing the companionship and live-in exemptions.  *See* Application of the Fair Labor Standards Act to Domestic Service, 78 Fed. Reg. 60,454-01 at 60,454–55 (Oct. 1, 2013).  The 1975 regulations permitted third party employers— defined as employers of home care workers who are not the individuals receiving care, their families, or their households—to claim both the companionship services and live-in exemptions. *Id.* (citing 29 C.F.R. § 552.109).  Accordingly, under the 1975 regulations, third party employers were exempt from the relevant minimum wage and maximum hours requirements of the FLSA.

In 2007, the Supreme Court upheld the DOL's interpretation of the FLSA that placed domestic workers employed by third party agencies within the ambit of the companionship exemption.  *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158 (2007).  In *Coke*, the Supreme Court concluded that the statutory language in the companionship exemption "refers broadly to 'domestic service employment' and to 'companionship services,'" and "expressly instructs the agency to work out the details of those broad definitions."  *Id.* at 167.  The Court concluded that "whether to include workers paid by third parties within the scope of the definitions is one of those details" delegated to the Department of Labor.  *Id.*

In 2013, the DOL announced that it was adopting a revised regulation, which it claimed was "consistent with Congress's intent to provide the protections of the FLSA to domestic workers while providing narrow exemptions for workers performing companionship services and live-in domestic service workers."  78 Fed. Reg. at 60,481.  The DOL explained that there was no indication that Congress considered excluding third party employers providing domestic services from the relevant FLSA requirements.  *Id.* at 60,482.  The DOL thereafter concluded that "the

9

exemptions excluding employees from coverage must . . . be defined narrowly in the regulations to achieve the law's purpose of extending coverage broadly." *Id.* Accordingly, the DOL's new regulation, which eventually became the 2015 Rule, would not allow third party employers to claim either the companionship exemption or the live-in exemption. *Id.* at 60,454.

In 2014, before the 2015 Rule became effective, a district court in the District of Columbia vacated the DOL's proposed rule, finding that Congress had not delegated to the DOL the authority "to parse groups of employees based on the nature of their employer." *Home Care Ass'n of Am. v. Weil*, 76 F. Supp. 3d 138, 145 (D.D.C. 2014) (hereafter *Weil I*), *rev'd*, 799 F.3d 1084 (D.C. Cir. 2015). In 2015, however, the Court of Appeals for the District of Columbia, applying *Chevron*, reversed the district court's decision. *Weil II*, 799 F.3d at 1090–94. In *Weil II*, the D.C. Circuit explained that the Supreme Court's decision in *Coke* confirmed that the FLSA vests the DOL with discretion to determine whether the companionship and live-in exemptions apply to third party agencies. *Id.* at 1087, 1090–93. The D.C. Circuit then held that the DOL's decision to extend the FLSA's protections to those employed by third party agencies was grounded in a reasonable interpretation of the FLSA and was neither arbitrary nor capricious. *Id.* at 1087, 1093–94. Finally, the D.C. Circuit rejected the argument that the DOL failed to provide an adequate justification for reversing its previous interpretation of the exemptions, concluding that the DOL—which had justified the 2015 Rule by describing, among other things, the "dramatic transformation of the home care industry" since 1975—had provided a "reasoned explanation for its change in policy." *Id.* at 1094–95.

The 2015 Rule was eventually codified in 29 C.F.R. § 552.109. First, with respect to the companionship exemption, section 552.109(a) provides that:

> Third party employers of employees engaged in companionship services within the meaning of § 552.6 may not avail themselves of the minimum wage and overtime

> exemption provided by section 13(a)(15) of the Act, even if the employee is jointly employed by the individual or member of the family or household using the services. However, the individual or member of the family or household, even if considered a joint employer, is still entitled to assert the exemption, if the employee meets all of the requirements of § 552.6.

29 C.F.R. § 552.109(a). Second, with respect to the live-in exemption, section 552.109(c) provides that:

> Third party employers of employees engaged in live-in domestic service employment within the meaning of § 552.102 may not avail themselves of the overtime exemption provided by section 13(b)(21) of the Act, even if the employee is jointly employed by the individual or member of the family or household using the services. However, the individual or member of the family or household, even if considered a joint employer, is still entitled to assert the exemption.

*Id.* § 552.109(c). Thus, the 2015 Rule effectively reverses course from the 1975 regulations and provides that third party employers may not claim the companionship and live-in exemptions.

### B. Defendants' Motion to Dismiss

Defendants contend that the shift in policy embodied in the 2015 Rule is not entitled to *Chevron* deference, and that the 2015 Rule should be invalidated as an impermissible construction of the FLSA. At the outset, Defendants concede that the Supreme Court's decision in *Coke*, 551 U.S. 158, precludes any arguments they could make under *Chevron* step one that Congress spoke directly to the issue of whether third party employers may avail themselves of the companionship and live-in exemptions. Accordingly, the Court turns directly to *Chevron* step two. Under *Chevron* step two, the Court must determine whether the 2015 Rule is a reasonable interpretation of the FLSA. Defendants' argument for invalidating the 2015 Rule rests predominantly on the Supreme Court's decision in *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134 (2018) (hereafter *Encino II*). Specifically, Defendants argue that, in light of *Encino II*, the DOL's narrow interpretation of the companionship and live-in exemptions, as set forth in the 2015 Rule, is unreasonable and thus not entitled to *Chevron* deference. Because Defendants' argument rests on

a flawed reading of *Encino II*, the Court rejects this proposition and finds that the 2015 Rule is a reasonable interpretation of the FLSA.

As noted, Defendants' motion focuses on the Supreme Court's decision in *Encino II*. The *Encino* litigation proceeded as follows. After the 2015 Rule at issue here went into effect, the Supreme Court examined the DOL's decision to change course regarding its interpretation of a different FLSA exemption—namely, an exemption from the FLSA overtime provisions for certain employees engaged in selling or servicing automobiles. *Encino I*, 579 U.S. at 214, 218; *see generally Encino II*, 138 S. Ct. 1134. In *Encino I*, the Court held that the DOL's regulation regarding the exemption was issued without a "reasoned explanation" and, therefore, the regulation was not entitled to *Chevron* deference. 579 U.S. at 222, 224. After concluding that the DOL's interpretation of the FLSA should receive no deference, the Supreme Court remanded the case to the U.S. Court of Appeals for the Ninth Circuit "to interpret the statute in the first instance." *Id.* When interpreting the FLSA on remand, the Ninth Circuit relied, in part, on the principle that FLSA exemptions should be construed narrowly. *See Encino II*, 138 S. Ct. at 1139–40 (citing *Navarro v. Encino Motorcars, LLC*, 845 F.3d 925, 935 (9th Cir. 2017)). After the Ninth Circuit issued its decision on remand, the case was again appealed to the Supreme Court. In *Encino II*, the Court reversed the Ninth Circuit's decision on remand, rejecting the "narrow-construction" principle as a useful guidepost for interpreting the FLSA. *Id.* at 1142–43. The Court explained that, "[b]ecause the FLSA gives no textual indication that its exemptions should be construed narrowly, there is no reason to give them anything other than a fair (rather than a narrow) interpretation." *Id.* (internal quotation marks omitted). The Court further reasoned that "[t]he narrow-construction principle relies on the flawed premise that the FLSA pursues its remedial purpose at all costs," when the numerous exemptions of the FLSA "are as much a part of the

12

FLSA's purpose as the overtime-pay requirement." *Id.* (internal quotation marks omitted). As a result, the Court concluded that courts have "no license to give the exemption anything but a fair reading." *Id.* Based on *Encino II*, therefore, Defendants argue that this Court should not defer to the DOL's narrow interpretation of the FLSA exemptions in its 2015 Rule and should, instead, give the applicable FLSA provisions a "fair reading" on its own accord, in the first instance. Unsurprisingly, Defendants contend that such a "fair reading" would return third party employers like them to qualifying for the companionship and live-in exemptions.

Contrary to Defendants' arguments, however, *Encino II* does not dictate that any DOL rule that interprets an FLSA exemption narrowly is *per se* unreasonable, and therefore, entitled to no deference under *Chevron*. Under Defendants' flawed reading of *Encino II*, courts would essentially be able to substitute their own interpretation of an FLSA exemption for the DOL's interpretation whenever the DOL has construed an exemption narrowly. *Encino II*, however, provided a guidepost for *judicial interpretation* of FLSA exemptions, not a mandate for DOL rulemaking. *See Flood v. Just Energy Mktg. Corp.*, 904 F.3d 219, 228 (2d Cir. 2018) (noting that, in *Encino II*, the Supreme Court "instruct[ed] that *courts* 'have no license to give the exemption anything but a fair reading'" (emphasis added)). It was only after the Supreme Court found in *Encino I* that *Chevron* deference was unwarranted that it proceeded to give the exemption a "fair reading" in *Encino II*, 138 S. Ct. at 1142–43. In other words, *Encino II* stands for the proposition that *after* finding that a DOL regulation involving an FLSA exemption is not entitled to any deference, a court is required to interpret the proper scope of the FLSA exemption "in the first instance" based on its "best reading" of the Act. *See id.* at 1139–40. The "fair reading" principle thus provides a guidepost for courts when interpreting DOL exemptions where *Chevron* deference does not apply. *Encino II* does not, by contrast, mandate that each DOL interpretation of an FLSA

exemption must incorporate the "fair reading" principle and, in doing so, avoid construing exemptions narrowly.

Here, the fact that the DOL has interpreted the companionship and live-in exemptions narrowly does not obviate the Court's obligation, at *Chevron* step two, to "defer to the agency's interpretation if it is 'reasonable,'" *see Encino I*, 579 U.S. at 220.[3] Otherwise, the DOL's "narrow" interpretation of an exemption would necessarily end the Court's *Chevron* step two analysis and move the Court directly to conducting its own analysis of the "best reading" of the FLSA. Even where the DOL has construed an exemption narrowly, however, the Court must still first determine whether the DOL's interpretation is "based on a permissible construction of the statute." *See Chevron*, 467 U.S. at 843. If the answer is yes, then the Court cannot substitute its own judgment for that of the agency. *See id.* at 844.

One other district court reached a similar conclusion with respect to *Encino II* and the 2015 Rule. *See Walsh v. Ideal Homecare Agency, LLC*, No. 2:20cv732, 2021 WL 4437483 (W.D. Pa. Sept. 28, 2021). In *Walsh*, the district court characterized the defendants' reliance on *Encino II* to invalidate the 2015 Rule as "misguided," reasoning that *Encino II* "did not overrule the longstanding principles governing judicial review of agency action undertaken pursuant to delegated authorization expressly granted by statute," but rather "unequivocally left this firmly established body of law intact." *Id.* at *2. The court explained that *Encino II* did not establish the principle that "all prior DOL regulations that were promulgated with reference to or under the

---

[3] Defendants claim that various other courts, including the Second Circuit, have rejected DOL interpretations that are based on a narrow, rather than a "fair," construction of the FLSA's exemptions. *See* ECF No. 70-1 at 24. None of the courts in the cases Defendants cite, however, took the steps Defendants ask the Court to take here. In other words, none of the courts found that, because the DOL had interpreted an exemption narrowly, the DOL's interpretation was not entitled to *Chevron* deference under *Encino II*. Rather, the cases emphasize, consistent with *Encino II*, that the fair reading principle applies to *courts* interpreting the scope of FLSA exemptions. *See, e.g.*, *Isett v. Aetna Life Ins. Co.*, 947 F.3d 122, 138 (2d Cir. 2020) (holding that, "[w]hen interpreting the scope of an FLSA exemption, *courts* must give the exemption a fair reading and shall not construe it narrowly against the employer seeking to assert the exemption" (emphasis added)).

14

auspices of the narrow construction rule are now forms of arbitrary and capricious agency action that are to be stripped of *Chevron* deference." *Id.* at *5. Accordingly, the district court rejected the defendants' challenge to the validity of the 2015 Rule. This Court finds the interpretation of *Encino II* in *Walsh* to be persuasive.

Thus, because *Encino II* expressly limits the *courts'*—rather than the DOL's—latitude when interpreting the FLSA, it does not mandate that, whenever the DOL narrowly interprets an exemption in the FLSA, such an interpretation is not entitled to *Chevron* deference. Rather, a rule that the DOL describes as a "narrow" interpretation of an exemption could still fall within the ambit of reasonable interpretations of the FLSA. If this is the case, then the Court cannot leap to its own "fair reading" of the exemption. With respect to the DOL's narrow construction of the companionship and live-in exemptions specifically, the D.C. Circuit has already held in *Weil II* that the 2015 Rule was based on a permissible construction of the FLSA and is therefore entitled to *Chevron* deference. The Court finds no reason to depart from this holding, which has been followed by courts across the federal judiciary.

Notably, in *Weil II*, the D.C. Circuit rejected the very argument Defendants make regarding the reasonableness of the 2015 Rule. 799 F.3d at 1093. In doing so, the D.C. Circuit discussed the Supreme Court's observation in *Coke* that "the text of the FLSA does not expressly answer the third-party-employment question," but rather leaves it to the DOL to determine whether the FLSA should apply to "all," "some," or "none" of the home care workers paid by third parties. *Id.* (quoting *Coke*, 551 U.S. at 167–68). Citing congressional reports from the passage of the 1974 amendments to the FLSA, the D.C. Circuit held that the DOL's narrow interpretation of the companionship exemption was "consistent with Congress's evident intention to 'include within the coverage of the Act all employees whose *vocation* is domestic service.'" *Id.* at 1094 (citing S.

15

Rep. No. 93-690, at 20, and H.R. Rep. No. 93-913, at 33–34, 36).  The court also found that it was reasonable for the DOL to "assume that Congress intended the live-in exemption to operate in much the same way as the similarly worded companionship exemption."  *Id.*  This Court sees no reason to depart from the holding in *Weil II*, which has been referenced by several courts, including courts in this Circuit, in recognizing the validity of the 2015 Rule.  *See Kinkead v. Humana, Inc.*, 206 F. Supp. 3d 751, 752 (D. Conn. 2016) (discussing *Weil II* and noting that "the legal validity of the [2015 Rule] is now clear"); *see also Green v. Humana at Home, Inc.*, No. 16-CV-7586 (AJN), 2017 WL 9916832, at *2 (S.D.N.Y. Sept. 29, 2017) (discussing the holding in *Weil II*); *Tagaeva v. BNV Home Care Agency, Inc.*, No. 16-CV-6869 (RRM) (RLM), 2018 WL 1320661, at *2 (E.D.N.Y. Mar. 13, 2018) (same).

The Court rejects Defendants' argument that, in *Weil II*, the D.C. Circuit upheld the 2015 Rule using "the now-erroneous narrow-interpretation standard," ECF No. 70-1 at 21.  The court in *Weil II* did not, itself, interpret the companionship and live-in exemptions narrowly.  Rather, the court held that it was reasonable for *the DOL* to promulgate regulations that interpret the exemptions as narrow ones.  *Weil II*, 799 F.3d at 1093.  For the reasons above, *Encino II* did not uproot this holding.  In fact, even in the wake of *Encino II*, courts in this District have repeatedly cited *Weil II* in recognizing the validity of the 2015 Rule.  *See Kinkead v. Humana at Home, Inc.*, 450 F. Supp. 3d 162, 172–73 (D. Conn. 2020) ("The validity of the new regulation was put into doubt for a time by an adverse decision from a district court in the District of Columbia, but the D.C. Circuit eventually reversed the district court's decision in August 2015."); *Kinkead v. Humana at Home, Inc.*, 330 F.R.D. 338, 343 (D. Conn. 2019) (referencing the holding in *Weil II*); *Maphutha v. Diligent Enters., Inc.*, No. 19-CV-1411 (VLB), 2021 WL 3493646, at *5 n.3 (D. Conn. Aug. 9, 2021) ("The D.C. Circuit reversed the district court and upheld the validity of the

domestic service rule on August 21, 2015."). Accordingly, *Weil II* maintains its weight as strong persuasive authority regarding the validity of the 2015 Rule.

The Court also rejects Defendants' argument that the 2015 Rule improperly departs from past DOL policy. As the D.C. Circuit held in *Weil II*, the DOL's justification for the 2015 Rule constitutes a "reasoned explanation," as required by the Supreme Court in *Fox*, 556 U.S. at 515. The administrative record reveals that the DOL displayed an unmistakable awareness that it was changing its position when it promulgated the 2015 Rule. *See* 78 Fed. Reg. at 60,482 ("[T]he commenters who noted that the Department is changing its position as to the proper treatment of third party employers in § 552.109 are correct . . . ."). The DOL justified this shift in policy with reference to the "dramatic expansion and transformation" the home care industry has undergone in the past several decades. *Id.* at 60,455. Accordingly, consistent with the D.C. Circuit's decision in *Weil II*, this Court finds that the 2015 Rule is valid, despite its departure from past DOL policy. *See Walsh*, 2021 WL 4437483, at *5 (noting that in *Weil II*, the D.C. Circuit "thoroughly considered the validity of the 2015 Rule and found it to be a reasonable interpretation of the statute that carries the force of law, notwithstanding that it was a departure from past practice" (citation omitted)).

The Court is likewise unconvinced by Defendants' argument that because the Supreme Court held in *Coke* that it was reasonable for the DOL to interpret the exemptions as applying to third party employers, the DOL's narrow interpretation of the exemptions in the 2015 Rule cannot also be considered reasonable, *see* ECF No. 70-1 at 21–22. Defendants offer no support for the proposition that, once the Supreme Court finds one interpretation of a statute to be reasonable, a subsequent, differing interpretation is unreasonable. Instead, *Coke* itself undermines Defendants' argument. In *Coke*, the Supreme Court specifically discussed Congress's "broad grant of

17

definitional authority" to the DOL to decide whether the FLSA's exemptions should apply to *all*, *some*, or *none* of the home care workers paid by third parties, 551 U.S. at 167–68; *see Weil II*, 799 F.3d at 1093; *see also Coke*, 551 U.S. at 167–68 (indicating that "whether, or how, the definition [of companionship services] should apply to workers paid by third parties raises a set of complex questions," and that "[s]atisfactory answers to such questions may well turn upon the kind of thorough knowledge of the subject matter and ability to consult at length with affected parties that an agency, such as the DOL, possesses"). Accordingly, the Supreme Court implied that, whether the DOL answered this question with "all," "some," or "none," any such interpretation could be considered reasonable. Moreover, the Supreme Court recognized in *Encino I* that an agency is free to change its policies, as long as it provides a "reasoned explanation" for the change. 579 U.S. at 221. It follows that what is reasonable could change at different points in time; indeed, the DOL justified its shift in policy based on the "dramatic expansion and transformation" of the home care industry over time. 78 Fed. Reg. at 60,455. Thus, this Court declines to find that the 2015 Rule is unreasonable, despite the DOL's shift from the policy the Supreme Court found reasonable in *Coke*.

Based on the foregoing, the Court finds that the 2015 Rule is a reasonable interpretation of the FLSA that does not constitute an improper departure from past DOL policy. Accordingly, the 2015 Rule is entitled to *Chevron* deference, and the Court declines Defendants' invitation to invalidate it. Because the 2015 Rule precludes Defendants from availing themselves of the companionship and live-in exemptions, and because these exemptions form the basis for

Defendants' dismissal arguments with respect to both the FLSA and CMWA claims in the SAC,[4] the Court must reject Defendants' request for dismissal.

## V. CONCLUSION

For the reasons described herein, Defendants' motion to dismiss is DENIED. Defendants shall answer the SAC by October 7, 2022.

**SO ORDERED** at Hartford, Connecticut, this 23rd day of September, 2022.

                         /s/ Sarala V. Nagala
                         SARALA V. NAGALA
                         UNITED STATES DISTRICT JUDGE

---

[4] Given this holding that the companionship and live-in exemptions do not apply to third party employers such as Defendants, the Court need not address Defendants' argument that the pleadings establish that Plaintiffs' activities fall under these exemptions.