## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GWENDOLINE ABOAH and TANIA STEWART, | ) | 3:20-CV-00763 (SVN) |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FAIRFIELD HEALTHCARE SERVICES, | ) | March 16, 2023 |
| INC. d/b/a BRIGHTSTAR CARE OF | ) | |
| FAIRFIELD & SOUTHBURY and | ) | |
| PETER R. MOORE, | ) | |
| *Defendants*. | ) | |

## RULING ON PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE AND MOTION FOR RULE 23 CLASS CERTIFICATION

Sarala V. Nagala, United States District Judge.

Plaintiffs Gwendoline Aboah and Tania Stewart, who were employed as live-in home health aides by Defendant Fairfield Healthcare Services, Inc., d/b/a BrightStar Care of Fairfield & Southbury ("BrightStar") (together with Defendant Peter R. Moore, "Defendants"), have brought this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Connecticut Minimum Wage Act ("CMWA"), Conn. Gen. Stat. § 31-58 *et seq.* Plaintiffs allege, individually and on behalf of all others similarly situated, that Defendants required caregivers to work long shifts without bona fide meal and sleep breaks, improperly excluded sleep and meal breaks from shifts caregivers worked when calculating the caregivers' wages, failed to account for food and lodging provided to caregivers when calculating their overtime rates of pay, and failed to accurately record caregivers' hours. Plaintiffs have now moved for conditional certification of an FLSA collective with respect to their federal claims and for class certification pursuant to Federal Rule of Civil Procedure 23 with respect to their state law claims. Defendants oppose both motions.

For the reasons below, the Court agrees with Plaintiffs that they have satisfied the requirements for conditional certification of an FLSA collective as to their claim that Defendants failed to account for food and lodging provided to live-in caregivers when calculating the caregivers' overtime rates of pay. The Court agrees with Defendants, however, that Plaintiffs have not met the requirements for conditional certification as to their claims that Defendants improperly excluded sleep and meal breaks from caregivers' shifts when calculating their wages and failed to accurately record hours caregivers worked. Plaintiffs' motion for conditional certification is therefore GRANTED IN PART and DENIED IN PART. The Court further agrees with Defendants that Plaintiffs have not met the requirements for class certification under Rule 23. Accordingly, Plaintiffs' motion for Rule 23 class certification is DENIED.

## I.    RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

In their Second Amended Complaint ("SAC"), ECF No. 69, Plaintiffs allege that Defendants have violated the FLSA and the CMWA in various ways. First, Plaintiffs allege that Defendants require live-in caregivers, who are referred to as home health aides ("HHAs"), to work long shifts without bona fide meal and sleeping periods in violation of the CMWA. SAC ¶ 4. Second, Plaintiffs allege that, because Defendants did not provide HHAs with bona fide meal and sleeping periods, federal regulations did not permit Defendants to exclude such periods from the hours HHAs worked during each 24-hour period. *Id.* ¶¶ 5–6, 58. Third, Plaintiffs allege that Defendants violated federal regulations by failing to include the value of food and lodging provided to HHAs in the HHAs' regular rates of pay when calculating the HHAs' overtime rates. *Id.* ¶¶ 14–16.

At the time Plaintiffs filed their SAC, the present certification motions were already pending. ECF Nos. 50, 52. Defendants then responded to the SAC by filing a motion to dismiss.

ECF No. 70.  Before ruling on Defendants' motion to dismiss, the Court entered an order directing the parties to address whether they should have the opportunity to re-brief Plaintiffs' certification motions in light of the new allegations in the SAC and with the benefit of the Court's then-anticipated ruling on Defendants' motion to dismiss.  ECF No. 75.  In response, Plaintiffs represented that they did not wish to re-brief the certification motions, but Defendants requested the opportunity to at least supplement their previous briefing.  ECF No. 76.  In September of 2022, the Court denied Defendants' motion to dismiss, ECF No. 77, and permitted the parties to submit supplemental briefing on Plaintiffs' certification motions if they wished to do so, ECF No. 78. Both parties subsequently submitted supplemental briefing.  ECF Nos. 81, 82.

In relevant part, the parties' pleadings in this action, as well as their exhibits and briefing regarding Plaintiffs' certification motions, reflect the following.  Defendant BrightStar employs HHAs who perform household services in private homes.  SAC ¶¶ 3, 48; ECF No. 54 at 10, 12. BrightStar assigns these HHAs to live with clients, SAC ¶ 3; ECF No. 54 at 9, 10, 46, so that the HHAs can provide safety services such as fall risk prevention and assist clients with tasks such as cooking, cleaning, bathing, dressing, feeding, and toileting, Gilday Dep. Tr., ECF No. 50-16, at 33:1–33:16; ECF No. 50-3.  It is undisputed that Plaintiff Aboah worked for BrightStar as a live-in HHA from July of 2018 until December of 2019, and Plaintiff Stewart worked for BrightStar as a live-in HHA from June of 2018 until July of 2020.  It is further undisputed that Defendant Moore owns BrightStar and either currently serves as, or formerly served as, President of the company.

When they begin working for BrightStar, HHAs typically attend an orientation.  ECF No. 54 at 10; Ward Dep. Tr., ECF No. 50-2, at 40:13–41:12.  Defendants contend that, at orientation, new HHA hires are told that "unless an aide is reporting otherwise, they are paid for – in a 24-hour period . . . 13 hours of work which is defined as actively providing items on the care plan."  ECF

No. 54 at 10 (citing Ward Dep. Tr. at 78:4–78:23).  According to Defendants, unless an HHA reports that they worked more than 13 hours, the HHA is typically paid 13 hours for each 24-hour shift because "8 hours of sleep" and "three other rest/meal/break time[s]" are subtracted from each shift.  *Id.* (citing Ward Dep. Tr. at 78:4–78:23).  In addition, Defendants submitted a PowerPoint presentation from BrightStar's new hire orientation, which states that the "Live in rate is $10.10/hour for 'full' 13 hour days."  ECF No. 54-6 at 19.  They further contend that "[e]ight hours of sleep time" was "communicated to BrightStar's clients and formed part of each clients' [sic] contract with BrightStar, to which Plaintiffs were third-party beneficiaries."  ECF No. 54 at 11 (citing ECF No. 54-7).

During their initial orientation sessions,[1] BrightStar caregivers are also trained on a timekeeping software called "Mobile ABS" (or "MABS") through which HHAs electronically record the time they work.  Ward Dep. Tr. at 41:3–41:24, 43:12–43:23, 51:5–51:6; Zapata Dep. Tr., ECF No. 50-13, at 13:20–16:11.  The MABS software prepopulates a daily 13-hour schedule of 7:00 am to 8:00 pm, which BrightStar employee Stephanie Ward characterized as a "placeholder" schedule.  Ward Dep. Tr. at 103:4–103:13.  Ward and BrightStar's payroll assistant, Priscilla Zapata, testified that HHAs could "start" and "stop" their shifts in MABS during each 24-hour period and record extra hours worked in addition to the 13-hour placeholder schedule.  Ward Dep. Tr. at 102:6–102:10; 122:3–122:5; Zapata Dep. Tr. at 12:8–12:19.  Ward further testified that BrightStar has paid live-in caregivers for more than 13 hours in a day.  Ward Dep. Tr. at 97:22–98:20.[2]

---

[1] Following their initial orientation sessions, HHAs would be assigned to a client and then given a specific orientation regarding that client.

[2] Defendants also reference an "Off-the-Clock Work Policy" in BrightStar's Employee Handbook, which purportedly prohibits employees from working time and failing to report it to the company.  *See* ECF No. 50-12 at 17–18.

In addition, the parties have submitted a version of BrightStar's Employee Handbook that includes the following policy for "Employees Working Twenty-Four Hour Shifts":

> Unless applicable state law requires otherwise, if a non-exempt employee works a shift of twenty-four (24) hours or longer, up to eight (8) hours of sleeping time can be excluded from compensable working time if all of the following apply:
> a. A voluntary agreement excluding sleeping time exists between the Company and the employee;
> b. Adequate sleeping facilities for an uninterrupted night's sleep are provided;
> c. At least five (5) hours of uninterrupted sleep is possible during a scheduled sleeping period; and
> d. Interruptions to perform duties are considered hours worked.

ECF No. 50-12 at 15.  The policy further provides that the following items will "be adhered to":

> a. Even if the sleeping period is longer than eight hours, only eight hours will be credited.
> b. The five (5) hours of sleep time do not have to be consecutive; however, if the sleep period is interrupted to such an extent that the employee cannot get a reasonable night's sleep, the entire period must be counted as working time.
> c. Sleep time does not necessarily have to be at night.
> d. The deduction of sleep time is prohibited where the demands of the job have seriously interfered with the employee's ability to sleep, or the sleeping facilities have been minimal.
> e. Any agreement for the treatment of compensable time for live-in employees must meet the requirements of federal and applicable state law and be an employer-employee agreement, not a unilateral decision by the employer. This agreement will be in writing.

*Id.* at 15–16.  Defendants have submitted an agreement between BrightStar and Plaintiff Stewart dated July 23, 2020, that addresses sleep and meal breaks and provides, in part, that Stewart is "entitled to up to eight (8) hours of sleep time," that she "will be provided with adequate sleeping facilities," and that she "will be compensated" if her sleep is interrupted.  ECF No. 54-19.  The agreement further states, that "[t]o recap/clarify:  during one 24 hour period you will be working 13 hours, taking a meal break 3 hours, and sleeping 8 hours."  *Id.*  Defendants have provided no such agreement between BrightStar and Plaintiff Aboah.

The Employee Handbook also includes a "Meal and Rest Break Policy," which states that BrightStar provides certain employees "with a minimum of one 30-minute consecutive, uninterrupted meal period for each work day that an employee works five (5) consecutive hours or more." ECF No. 50-12 at 16–17. The parties appear to agree that this policy does not apply to live-in HHAs. ECF No. 50-1 at 23 (citing, in part, Ward Dep. Tr. at 92:7–92:12).

Both Plaintiffs signed acknowledgements that they received a copy of the Employee Handbook, ECF No. 54-4; ECF No. 54-5, and all BrightStar caregivers are trained on parts of the Employee Handbook during their orientation sessions, Ward Dep. Tr. at 56:15–56:20.

Finally, Ward testified that Defendants' clients generally provide food and lodging to live-in HHAs. *See id.* at 168:19–168:22. There does not appear to be any dispute between the parties that the value of this food and lodging is not included in HHAs' regular rates of pay when calculating their overtime rates. ECF No. 50-1 at 26; ECF No. 54 at 32.

## II.    CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE

Plaintiffs seek conditional certification of an FLSA collective that includes: "All [HHAs] who worked at least one 'live-in' shift for the Defendants . . . in Connecticut during any time between May 15, 2017, until the date of final judgment." ECF No. 50 at 1. Upon review of the parties' briefing and evidence, the Court finds that Plaintiffs have satisfied the requirements for conditional certification as to their claim that Defendants failed to include the value of food and lodging in HHAs' regular rates of pay for purposes of calculating their overtime rates, but not as to their other claims. Thus, Plaintiffs' motion for conditional certification of an FLSA collective, ECF No. 50, is GRANTED IN PART and DENIED IN PART.

A.  Legal Standard

Under the FLSA, employees may bring "collective actions," which allow them to "sue on behalf of themselves and other employees who are 'similarly situated.'"  *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 243–44 (2d Cir. 2011) (citing 29 U.S.C. § 216(b)).  The FLSA requires, however, that an employee "affirmatively consent to join a 'collective action' in order to assert a claim."  *Id.* at 244; *see* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any [action under section 216(b)] unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

Courts in the Second Circuit apply a "two-step method" to determine whether an action should be certified as a collective action under the FLSA.  *Myers v. Hertz Corp.*, 624 F.3d 537, 554–55 (2d Cir. 2010).  First, a motion for conditional certification is filed and the Court "must determine whether there are any 'similarly situated' potential plaintiffs who should receive notice of the pending action and have an opportunity to opt in."  *See Zhu v. Matsu Corp.*, 424 F. Supp. 3d 253, 263 (D. Conn. 2020) (citing *Myers*, 624 F.3d at 555).  Such notice may be sent after the Court determines that plaintiffs have made a "modest factual showing" that they and potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law."  *Myers*, 624 F.3d at 555.

Once a court has conditionally certified an FLSA collective, any similarly situated employees "may opt into the case and become plaintiffs."  *Marichal v. Attending Home Care Servs., LLC*, 432 F. Supp. 3d 271, 277 (E.D.N.Y. 2020).  No employee may become a plaintiff until he or she files a written consent on the docket.  29 U.S.C. § 216(b).  This "opt-in" procedure— in contrast to Rule 23's "opt-out" procedure—is a distinct statutory requirement for an FLSA collective.  *See Zhu*, 424 F. Supp. 3d at 262 ("Unlike a Rule 23 class action where potential class

members are parties to the suit unless they affirmatively opt out, an FLSA collective action requires plaintiffs to affirmatively opt in to the suit to benefit from the judgment.").

At the second step of the certification process, the Court will, "on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Myers*, 624 F.3d at 555. The action may be "de-certified" if the record reveals that the opt-in plaintiffs are not similarly situated. *Id.* In such cases, the opt-in plaintiffs' claims may be dismissed without prejudice. *Id.*

B. <u>Whether Conditional Certification Is Appropriate</u>

In their SAC and their conditional certification briefing, Plaintiffs allege that Defendants violated the FLSA in three ways: (1) by failing to include the value of food and lodging provided to HHAs in their regular rates of pay for purposes of calculating HHAs' overtime rates; (2) by improperly excluding meal and sleeping periods from shifts HHAs worked when calculating their wages; and (3) by failing to properly record HHAs' hours. The Court will address each theory of liability in turn.

1. *Exclusion of Food and Lodging from Overtime Calculations*

Plaintiffs assert that Defendants have violated the FLSA by failing to include the value of food and lodging provided to HHAs in the HHAs' regular rates of pay for purposes of calculating their overtime rates. Specifically, Plaintiffs claim that Defendants' clients provide food and lodging to live-in HHAs and that, by law, Defendants must include the value of such food and lodging in the HHAs' regular rates of pay when calculating their overtime rates. Plaintiffs contend that, because HHAs' overtime rates are a multiple of their regular rates of pay, Defendants' exclusion of food and lodging from their regular rates of pay improperly lowered the HHAs' overtime rates.

The Court finds that Plaintiffs have made a modest factual showing that there are similarly situated potential plaintiffs with respect to this claim.  Plaintiffs have presented evidence that Defendants' clients generally provide HHAs with food and lodging.  *See* Ward Dep. Tr. at 168:19–168:22.  Defendants do not dispute that they have employed several HHAs other than Plaintiffs, ECF No. 50-7 at 7, and that they do not include the value of food and lodging in HHAs' regular rates of pay for purposes of calculating overtime, *see* ECF No. 54 at 33.  While Defendants assert that they are not *required* to include the value of such food and lodging in HHAs' regular rates of pay and that they have a meal reimbursement policy that complies with the FLSA, *id.* at 32–33, 35–37; ECF No. 81 at 6–7, such arguments raise complex legal and factual issues that go to the merits of Plaintiffs' claim and are best addressed after further development of the record, *see Shillingford v. Astra Home Care, Inc.*, 293 F. Supp. 3d 401, 407 (S.D.N.Y. 2018) (at the conditional certification stage, courts should not "decide substantive issues going to the ultimate merits").  Accordingly, the Court finds that Plaintiffs have made a modest factual showing that there are similarly situated potential plaintiffs with respect to their food and lodging claim.

The Court is unpersuaded by Defendants' argument that Plaintiffs have not suffered an injury-in-fact and therefore lack standing under the FLSA to pursue this claim on behalf of themselves or any other employees.  In making this argument, Defendants assert that, because they had no obligation to include the value of food and lodging in Plaintiffs' regular rates of pay, Plaintiffs suffered no injury with respect to their overtime pay.  ECF No. 54 at 34–35.  The Court disagrees and finds that Plaintiffs have not only plausibly alleged that they and other HHAs were injured by Defendants' failure to account for food and lodging in calculating overtime, but have also provided evidence in support of this claim.  Defendants' argument, while framed as one

regarding standing, goes to the *merits* of Plaintiffs' claim and is not an appropriate issue for the Court to decide at the conditional certification stage.

While resolution of Plaintiffs' food and lodging claim with respect to particular opt-in plaintiffs will necessarily involve some individualized inquiries as to precisely how much additional overtime pay, if any, such individuals may be owed, this does not—on its own—make conditional certification inappropriate. *See Neff v. Flowers Foods, Inc.*, No. 5:15-CV-254, 2019 WL 10750005, at *10 (D. Vt. May 16, 2019) (noting that "individualized inquiries into damages do not warrant decertification"). Indeed, "[i]f such inquiries were an obstacle to collective resolution in FLSA overtime cases, few cases could ever be decided on a collective basis." *Id.*[3] The Court therefore rejects Defendants' argument that individualized inquiries preclude conditional certification as to this claim.

For these reasons, Plaintiffs' request for conditional certification is GRANTED as to their claim that Defendants have violated the FLSA by failing to account for food and lodging provided to HHAs when calculating HHAs' overtime rates of pay.

### 2. Exclusion of Meal and Sleeping Periods from 24-Hour Shifts

Next, Plaintiffs allege that Defendants improperly excluded meal and sleeping periods from HHAs' 24-hour shifts when calculating their wages, even though Defendants did not enter agreements with HHAs to exclude such periods from their compensable time. Defendants do not dispute that, in order to exclude sleep and meal time, they were required to enter into agreements with their employees to that effect. *See* 29 C.F.R. § 552.102(a). Nonetheless, the Court finds that Plaintiffs have not made a modest factual showing that there are other similarly situated plaintiffs

---

[3] Plaintiffs have also alleged that, because Defendants have not provided records for the value of food and lodging, federal regulations provide a standardized formula for computing unpaid overtime wages. *See* SAC ¶¶ 14–15 (citing 29 C.F.R. §§ 552.100(c) & (d)).

with respect to the lack of agreements to exclude meal and sleeping periods, although this is a relatively close question.

In seeking conditional certification on this claim, Plaintiffs first argue that they have named other specific HHAs "who resided at . . . a client's household for periods of 24 hours or more." ECF No. 50-1 at 16–17.  Defendants do not seriously dispute that they employed other live-in HHAs who worked 24-hour shifts, though the Court notes that Plaintiffs' evidence in support of this contention is somewhat vague.  *See id.* at 16 (stating that Plaintiff Aboah "identified a live-in HHA whose name she did not recall," and citing testimony in which Plaintiff Stewart stated that another HHA had assisted her, Stewart Dep. Tr. at 88:23–89:9; that another individual told her she got up at night after working a 13-hour shift, *id.* at 199:9–201:9; and that she spoke with other HHAs who purportedly received arbitration agreements, as well as "live-in" and "live-in rate" agreements, from Defendants, *id.* at 225:12–226:15, 228:13–228:17, 283:11–283:17).  Simply residing in a client's home for 24-hour periods, however, does not demonstrate that the other HHAs were similarly situated in that they did not have agreements with BrightStar to exclude sleep time.

Specifically, Plaintiffs do not reference evidence showing that any other HHAs had meal and sleeping periods excluded from the compensable time of their 24-hour shifts *without an agreement to do so*.  For example, while Plaintiffs have provided testimony and timesheets purporting to show that Defendants generally paid another employee for 13-hour days, *see* ECF No. 50-15, Ward Dep. Tr. at 148:6–154:20, Plaintiffs do not cite evidence demonstrating that this other HHA did not have an agreement to exclude meal and sleeping periods.  Plaintiffs have not provided an affidavit from this other employee—or any other HHA, for that matter—averring that Defendants excluded his or her meal or sleeping periods without an agreement to do so.  While such an affidavit is not necessarily required, it is not enough for Plaintiffs to vaguely reference

other HHAs who purportedly worked for Defendants.  Rather, Plaintiffs must make a modest factual showing that other HHAs were also victims of a common policy or plan that violated the law, which they have not done here.  Indeed, it appears that Plaintiff Stewart may have entered into an agreement with BrightStar to exclude her sleep and meal time, while Plaintiff Aboah did not, suggesting that even the two named Plaintiffs are differently situated.

Even though Plaintiffs have not named any other *specific* similarly situated HHAs, however, conditional certification could still be appropriate if Plaintiffs have shown that they and other HHAs were all subject to "a common unlawful policy."  *See Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 354–55 (E.D.N.Y. 2012) (collecting cases).  In attempting to make such a showing, Plaintiffs rely heavily on the policies in BrightStar's Employee Handbook, as well as evidence purportedly relating to such policies.  *See* ECF No. 50-1 at 13, 17, 21–25.  For the following reasons, this evidence falls short of showing that Plaintiffs and other HHAs have been subjected to a common unlawful policy.

First, with respect to the exclusion of sleeping periods, Plaintiffs point to the policy for "Employees Working Twenty-Four Hour Shifts" in BrightStar's Employee Handbook.  *Id.*  As discussed above, this policy provides that, "[u]nless applicable state law requires otherwise, if a non-exempt employee works a shift of twenty-four (24) hours or longer, up to eight (8) hours of sleeping time *can* be excluded from compensable working time," *if* several conditions apply.  ECF No. 50-12 at 15 (emphasis added).  These conditions include that "[a] voluntary agreement excluding sleeping time exists between [BrightStar] and the employee" and that "[a]t least five (5) hours of uninterrupted sleep is possible during a scheduled sleeping period."  *Id.*  The Employee Handbook further states:  "Any agreement for the treatment of compensable time for live-in employees must meet the requirements of federal and applicable state law and be an employer-

employee agreement, not a unilateral decision by the employer.  This agreement will be in writing." *Id.* at 15–16.

The Court cannot discern, based on this policy, that other similarly situated HHAs should be notified of Plaintiffs' pending claim regarding the exclusion of sleeping periods.  At the outset, while the Employee Handbook provides, to a certain extent, a "common policy or plan," Plaintiffs have not shown that it provides a "common policy or plan *that violates the law*," *see Myers*, 624 F.3d at 555 (emphasis added).  The policy provides that sleeping periods *can* be excluded if various conditions, including the existence of a written agreement to exclude such sleeping periods, are met.  Plaintiffs do not plausibly argue that the *potential* to exclude sleeping periods by written agreement is unlawful.  Indeed, Plaintiffs expressly argue that, under the FLSA and associated federal regulations, sleep time may *only* be excluded by an employer-employee agreement.  *See* ECF No. 55 at 7–8 (quoting U.S. Dep't of Labor, Field Assistance Bulletin No. 2016-1 (Apr. 25, 2016)).  As noted, the policy in BrightStar's Employee Handbook specifically requires a voluntary, written agreement as a prerequisite to excluding sleep time from an HHA's compensable time.

Recognizing that the policy in BrightStar's Employee Handbook only permits Defendants to exclude sleep time by written agreement, Plaintiffs assert that Defendants have nonetheless violated the FLSA by departing from their own policy and excluding sleep time from compensable time even though they had no agreements to do so with individual HHAs.  *See* ECF No. 55 at 8.  The flaw in this argument is that Plaintiffs fail to cite evidence showing that Defendants actually excluded the sleeping periods of any other HHAs *without agreements to do so*.  Plaintiffs attempt to characterize evidence in the record as showing that HHAs, in general, were subject to a common policy or plan under which they "were paid for the straight '13 hour shift' from 7:00 a.m. to 8:00 p.m. and no more, no less."  ECF No. 50-1 at 23–24.  But the evidence they reference does not

demonstrate that this is how HHAs were paid; rather, it suggests that 13 hours were prepopulated in the MABS system as a "placeholder" schedule, Ward Dep. Tr. at 103:19–103:25, that HHAs could report—and be paid for—additional hours that they worked, *id.* at 153:18–154:18; *see also id.* at 122:3–122:5, and that whatever was ultimately included in the HHAs' schedules would be processed by payroll, Zapata Dep. Tr. at 56:14–58:25. Thus, Plaintiffs have not shown that other HHAs were subject to a common policy or plan under which they were not paid for sleeping periods without an agreement to exclude such periods. Rather, Plaintiffs have presented evidence that Defendants have a policy under which sleeping periods *can* be excluded from shifts by written agreement and individual HHAs *might* only be paid for 13 hours if they do not record that they worked additional hours.

Notably, Defendants have presented evidence suggesting, for example, that Plaintiff Stewart did in fact sign an agreement to exclude sleep time from hours she worked, ECF No. 54-19, that eight hours were not necessarily always excluded from HHAs' 24-hour shifts, Ward Dep. Tr. at 153:18–154:2, and that HHAs—including Plaintiff Aboah—were compensated for hours worked beyond the 13-hour "placeholder" schedule in BrightStar's timekeeping system, *see* ECF No. 56-2. This evidence further cuts against Plaintiffs' bald assertions that they and potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law," *see Myers*, 624 F.3d at 555. To be sure, Plaintiffs' burden of making a factual showing that other individuals are similarly situated is "modest," *id.*, and the Court cannot, at this stage, "resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations," *Shillingford*, 293 F. Supp. 3d at 407. Plaintiffs' burden, however, is "not non-existent" and their showing "must still be based on some substance." *Id.* Thus, in the absence of any substantive

showing that Defendants excluded the sleeping periods of other HHAs without an agreement to do so, conditional certification with respect to this claim is inappropriate.[4]

In sum, BrightStar's policy merely states that HHAs *can* enter into agreements to exclude sleeping periods, not that eight hours are automatically excluded from HHAs' 24-hour shifts. Thus, whether Defendants are liable for this claim will necessarily depend on individualized questions as to whether Defendants *did* in fact exclude the sleeping periods of other HHAs *without* agreements to do so. Importantly, exclusion of sleeping periods from HHAs' 24-hour shifts is not, in all instances, unlawful. Rather, it is unlawful under certain circumstances in the absence of an employer-employee agreement to exclude such periods. While Plaintiffs have pointed to evidence of Defendants' general compensation practices, they have not pointed to evidence of a lack of agreements between Defendants and other HHAs to exclude sleeping periods. Thus, because Plaintiffs have not made a modest factual showing that Defendants excluded any other HHA's sleep time without an agreement to do so, their request for conditional certification as to this claim is denied.[5]

For similar reasons, Plaintiffs' request that the Court conditionally certify an FLSA collective as to their claim that Defendants improperly excluded meal periods from the compensable time in HHAs' 24-hour shifts fares no better. Specifically, Plaintiffs have not made

---

[4] Plaintiffs argue that Ward "admitted" in deposition testimony "that . . . no agreement [to exclude sleeping periods] was in place." ECF No. 55 at 7–8 (citing Ward Dep. Tr. at 82:4–82:6, 83:2–83:9). The deposition testimony Plaintiffs cite, however, does not demonstrate that Defendants had a policy of excluding HHAs' sleeping periods without agreements to do so. Rather, in the course of testifying about her role in orientation sessions, Ward testified that, from 2017 to 2020, BrightStar did not sign "sleep agreement[s]" with employees *at orientation*. *See* Ward Dep. Tr. at 82:19–83:9; *see also id.* at 82:2–82:6 ("Do you, at orientation in that period of time, 2017 to 2020 when this handbook was in effect, did you sign any voluntary agreement with the live-in caregiver to exclude eight hours of sleeping time?"). This testimony does not establish that BrightStar did not, at any stage, enter agreements with HHAs to exclude sleep time and, thus, it is simply insufficient to show that any other HHAs had sleep time excluded without agreements to do so.

[5] For the first time in their supplemental briefing, Defendants argue that Plaintiffs incorrectly cite to 29 C.F.R. § 785.22 with respect to their sleeping period claim, when 29 C.F.R. § 785.23 is the relevant regulation that applies to live-in caregivers. Because the Court finds that, regardless of which regulation applies, conditional certification is inappropriate as to Plaintiffs' sleeping period claim, it need not reach Defendants' argument on this point.

a modest factual showing that Defendants improperly excluded meal periods from any other HHAs' 24-hour shifts without an agreement to do so. The Court is unpersuaded by Plaintiffs' citations to evidence suggesting that Defendants' "Meal and Rest Break Policy" does not apply to HHAs, *see* ECF No. 55 at 12; ECF No. 50-12 at 16; Ward Dep. Tr. at 89:22–92:12. Plaintiffs appear to argue that the inapplicability of this policy to HHAs suggests that there was no agreement at all to exclude meal periods from HHAs' 24-hour shifts. But the mere fact that this specific policy did not apply to HHAs does not mean that HHAs did not have separate agreements to exclude meal periods. In the absence of evidence to the contrary, the Court cannot conclude that whether Defendants improperly excluded meal periods will depend on anything other than inquiries individualized to particular HHAs.[6]

In so holding, however, the Court notes that Defendants' arguments opposing conditional certification on Plaintiffs' meal and sleeping period claim are somewhat self-contradictory. First, Defendants argue that Plaintiffs' agreements with BrightStar to exclude meal and sleeping periods from compensable time are demonstrated by evidence including BrightStar's Employee Handbook, BrightStar's orientation PowerPoint presentations, verbal statements made during orientations, and Plaintiffs' "continued employment" for Defendants. ECF No. 54 at 20. Then, even though all these types of evidence would likely also apply to *other* HHAs besides Plaintiffs, Defendants argue that whether other HHAs entered into similar agreements is a "fact intensive, individualized inquiry because the agreement could have been either express or implied." *Id.* Defendants appear to be seeking to have it both ways by arguing that exclusion of *Plaintiffs'* meal and sleeping periods was permissible based in part on this evidence, but that whether such evidence

---

[6] Citing to the same testimony discussed in note 4, *supra*, Plaintiffs argue that Ward "admitted" in deposition testimony "that there was no agreement [to exclude meal periods] in place." ECF No. 55 at 12 (citing Ward Dep. Tr. at 82:4–82:6, 83:2–83:9). The deposition testimony Plaintiffs cite, however, does not discuss meal periods at all; rather it discusses potential agreements to exclude sleeping periods.

created permissible agreements for other HHAs constitutes a fact-intensive inquiry. Indeed, Plaintiffs make potentially compelling arguments as to why certain evidence—such as BrightStar's Employee Handbook—does *not* constitute an agreement to exclude meal and sleeping periods. *See* ECF No. 55 at 8. Ultimately, because Plaintiffs have failed to present evidence that Defendants excluded other HHAs' meal and sleeping periods *without* agreements to do so, conditional certification on this claim is inappropriate. In reaching this conclusion, however, the Court leaves for another day whether the evidence Defendants cite did indeed create permissible agreements to exclude Plaintiffs' meal and sleeping periods from their 24-hour shifts.

For these reasons, Plaintiffs' request for conditional certification is DENIED as to their claim that Defendants improperly excluded meal and sleeping periods from HHAs' 24-hour shifts.[7]

### 3. Recordkeeping Violations

Although the SAC alleges that Defendants failed to keep proper records of HHAs' hours, *see* SAC ¶ 108, Plaintiffs concede that allegations of such recordkeeping violations do not constitute standalone claims under the FLSA, ECF No. 50-1 at 27. Instead, Plaintiffs use their recordkeeping allegations to support their argument that Defendants' purported failure to compensate HHAs for meal and sleeping periods constituted *willful* violations of the FLSA. *Id.* at

---

[7] Although Plaintiffs expressly disavow that they are seeking conditional certification on any claim specifically pertaining to interruptions to their meal and sleeping periods, ECF No. 55 at 14, the SAC is ambiguous on this point, *see* SAC ¶¶ 10, 106. In any event, determining whether HHAs were interrupted during meal and sleeping periods and reported those interruptions to Defendants is an individualized inquiry because HHAs worked in different environments for different clients with different needs. Courts in this District have denied conditional certification in similar circumstances where plaintiffs did not set forth sufficient evidence to suggest that other HHAs experienced the same interruptions, with the defendants' knowledge, as the plaintiffs. *See Modise v. Careone Health Servs., LLC*, No. 3:20-CV-00765 (KAD), 2021 WL 3421711, at *5 (D. Conn. Aug. 5, 2021) (denying in part motion for conditional certification where plaintiff averred that another employee "did not sign any agreement for Defendants to exclude sleep time and meal breaks from the hours she worked," but plaintiff did not represent that the other employee's "sleep or meal breaks were interrupted" or that any other employees "worked through their scheduled breaks without compensation"). Thus, even if such interruption claims were a subject of Plaintiffs' motion, conditional certification on these claims would not be appropriate because Plaintiffs do not provide evidence regarding interruptions to any other HHAs' meal and sleeping periods or whether Defendants had notice of such interruptions.

27–29.  Accordingly, the Court need not address whether such alleged recordkeeping violations should be conditionally certified as a standalone claim.

C.  Proposed Notices and Consent Forms

Having found conditional certification appropriate as to Plaintiffs' food and lodging claim, the Court next addresses issues related to notice to potential opt-in plaintiffs.  Although the FLSA has no provision for issuing notice, it is well established that district courts have the "power to authorize" notice and "broad discretion to craft appropriate notices in individual cases." *Bittencourt v. Ferrara Bakery & Café Inc.*, 310 F.R.D. 106, 116 (S.D.N.Y. 2015); *see Rosario v. Valentine Ave. Disc. Store, Co.*, 828 F. Supp. 2d 508, 518 (E.D.N.Y. 2011) ("Determining what constitutes sufficient notice to putative plaintiffs in a Section 216(b) collective action is a matter left to the discretion of the district courts.").  "Because the benefits of a collective action depend on employees receiving notice of its pendency 'so that they can make informed decisions about whether to participate,' district courts are encouraged to monitor the notice process and ensure that the proposed notice is 'timely, accurate, and informative.'" *Zhu*, 424 F. Supp. 3d at 267.

As a preliminary matter, the Court notes that Plaintiffs and Defendants have each provided separate proposed notices and consent forms for the Court's review.  Not only do the variations between the parties' proposals make it difficult for the Court to address their precise notice-related disputes, but the Court expects the parties—all of whom are counseled—to be able to confer in good faith and resolve many of their disputes without the Court's intervention.  Accordingly, the Court will order the parties to confer and submit a revised proposed notice and consent form within 10 days of entry of this ruling.  The proposed language of both Plaintiffs and Defendants shall be submitted in a single document that includes any remaining objections any party may have to language proposed by other parties.  The revised proposed notice shall comply with the Court's

resolutions below of various disputes the parties have raised in their briefing, as well as the guidance provided in Judge Shea's January 2021 decision in this action, *see Aboah v. Fairfield Healthcare Servs., Inc.*, No. 3:20-CV-00763 (MPS), 2021 WL 6337748, at *10 (D. Conn. Jan. 12, 2021).

### 1.   Scope of Proposed FLSA Collective

The parties raise multiple issues regarding which current and former HHAs should receive notice of this suit.  For the reasons below, the Court finds that notice may be sent to all HHAs who worked more than 40 hours in any given week for BrightStar in Connecticut between June 2, 2017, and the present.

### a.   Relevant Period of Time

To begin, the parties dispute the relevant notice period with respect to Plaintiffs' food and lodging claim.  Plaintiffs argue that the relevant period is May 15, 2017, to the present, ECF No. 50-18 at 1, while Defendants argue that the notice period should begin two years prior to the date the notice is sent, ECF No. 54 at 42–43.  The Court finds that the notice period shall begin on June 2, 2017, three years prior to the date this action was initiated.

FLSA claims are generally subject to a two-year statute of limitations period, unless a plaintiff alleges that the defendant's violation was willful, in which case a three-year limitations period applies.  *See* 29 U.S.C. § 255(a).  "To trigger a three-year limitations period at the conditional certification stage, a plaintiff need only plead that the employer acted willfully." *Zhu*, 424 F. Supp. 3d at 268.  Moreover, although the statute of limitations runs on opt-in plaintiffs' individual claims "until they formally consent to join the suit," courts "frequently authorize a more inclusive notice period that 'dates back to three years before the filing of the original complaint.'" *Id.* at 269.  Here, Plaintiffs allege that Defendants "knowingly and willfully failed to pay

[Plaintiffs] and other live-in HHAs . . . the full wages that they were due." SAC ¶ 89. Thus, because Plaintiffs have alleged that Defendants acted willfully, the Court finds that the notice period shall begin three years before Plaintiffs initiated this action.[8]  *See Modise*, 2021 WL 3421711, at *6 ("Even where willfulness is disputed, the court applies the three-year statute of limitations for purposes of certifying a representative action." (internal quotation marks omitted)).

In setting an inclusive notice period, the Court is mindful that "opt-in plaintiffs with untimely claims may have colorable equitable tolling arguments" with respect to the statute of limitations in this action.[9]  *Zhu*, 424 F. Supp. 3d at 269. Courts have set more inclusive notice periods, for example, where "the limitations period may be tolled because of the defendants' failure to post . . . workplace notices, as required by the FLSA," or where there has been a "significant delay" in ruling on the conditional certification motion. *Id.* Here, it appears that specific issues related to tolling will be particularly important to determining whether potential opt-in plaintiffs' claims will proceed. Plaintiffs have alleged that Defendants agreed to toll the statute of limitations period while the parties underwent mediation, that Defendants failed to post workplace notices as required by the FLSA, and that the limitations period should be tolled to avoid "inequitable circumstances." SAC ¶¶ 90–95. Moreover, the Court's ruling on Plaintiffs' present motion has been significantly delayed by circumstances including the transfer of this case to the undersigned during the motion's pendency, the filing of Plaintiffs' SAC, and the Court's adjudication of Defendants' motion to dismiss the SAC. Each of these issues may affect whether potential opt-in plaintiffs' claims may proceed. *See Zhu*, 424 F. Supp. 3d at 269 (noting that significant delay in

---

[8] Although Plaintiffs' complaint is dated May 15, 2020, it was not actually filed until June 2, 2020. *See* Compl. at 1. Thus, June 2, 2020, is the date on which this action was initiated.

[9] Normally, an opt-in plaintiff in an FLSA collective action may only recover for damages that were incurred during the two or, in some cases, three years prior to the date she opts in to the collective. *See* 29 U.S.C. § 256(b); *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012).

ruling on a conditional certification motion "provides 'a particularly strong basis for potential equitable tolling' arguments" (collecting cases)).

To be sure, despite that the Court has set an inclusive notice period, Defendants "may still challenge the timeliness of the individual opt-in plaintiffs' claims at the second stage of the certification process, after the close of discovery." *Id.* At this stage, however, the Court finds that use of a three-year limitations period is appropriate "[o]ut of an abundance of caution" and "to avoid any merit-based determinations" at the conditional certification stage. *See Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007). The Court will address specific issues related to timeliness and the tolling of the statute of limitations at the second stage of the certification process.

b. Number of Shifts Worked

The Court turns next to the parties' dispute regarding how many hours or shifts an HHA must have worked to receive notice of this suit. Plaintiffs argue that notice should be sent to all HHAs who worked at least one 24-shift during the notice period, ECF No. 50-18 at 1, while Defendants argue that notice should only be sent to HHAs who worked at least one week of more than 40 hours during the notice period, ECF No. 54 at 42–43. The Court agrees with Defendants. Plaintiffs' food and lodging claim specifically alleges that Defendants failed to include food and lodging in HHAs' regular rates of pay *for purposes of calculating overtime*. SAC ¶ 86. It follows that only HHAs who worked overtime are eligible to recover for the alleged violations in this claim. Accordingly, the Court finds that notice may be sent to HHAs who worked more than 40 hours in a week at least once during the notice period set forth above.

c. Relevance of Arbitration Agreements

The parties also dispute the relevance of arbitration agreements Defendants purportedly entered with certain HHAs.  Defendants assert that notice should not be sent to any HHAs who signed these arbitration agreements because such HHAs would need to arbitrate their claims against Defendants and are therefore ineligible to join the FLSA collective in this action.  ECF No. 54 at 43–44.  Plaintiffs, on the other hand, challenge the validity of these arbitration agreements, asserting that Defendants improperly pressured HHAs to sign the agreements involuntarily after Defendants were notified of this litigation.  *See* ECF No. 55 at 6, 9–10, 22–23.  After reviewing the parties' briefing on this issue, the Court will permit notice to be sent to HHAs regardless of whether they purportedly signed arbitration agreements with Defendants.

At the outset, the Second Circuit has not spoken to the precise issue of whether notice may be sent to potential opt-in plaintiffs when a defendant asserts that such recipients signed arbitration agreements that make them ineligible to join a proposed collective.  The Fifth and Seventh Circuits have both held that—at least under certain circumstances—it is improper to send notices to such recipients.  *See In re JPMorgan Chase & Co.*, 916 F.3d 494, 502–03 (5th Cir. 2019); *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1047 (7th Cir. 2020).  Both of these circuits, however, "place certain requirements upon the employer with respect to showing that the arbitration agreements are valid and binding and that they actually would preclude their signatories from participating in the collective action."  *See Headly v. Liberty Homecare Options, LLC*, No. 3:20-CV-00579 (OAW), 2022 WL 2181410, at *7 (D. Conn. June 16, 2022) (citing *In re JPMorgan Chase & Co.*, 916 F.3d at 502–03, and *Bigger*, 947 F.3d at 1047).  For example, the Seventh Circuit has held that courts may authorize notice to recipients who purportedly signed arbitration agreements, *unless* "(1) no plaintiff contests the existence or validity of the alleged arbitration agreements, or (2) after

the court allows discovery on the alleged agreements' existence and validity, the defendant establishes by a preponderance of the evidence the existence of a valid arbitration agreement for each employee it seeks to exclude from receiving notice." *Bigger*, 947 F.3d at 1047.

While no binding authority on this issue exists in the Second Circuit, the "weight of jurisprudence" among district courts in this Circuit "favors erring on the side of being overinclusive when sending notice to potential plaintiffs." *See Headly*, 2022 WL 2181410, at *7 (citing *Zambrano v. Strategic Delivery Sols., LLC*, No. 15 CIV. 8410 (ER), 2021 WL 4460632, at *10 (S.D.N.Y. Sept. 28, 2021), and *Barone v. LAZ Parking Ltd., LLC*, No. 3:17-CV-01545 (VLB), 2019 WL 5328832, at *3 (D. Conn. Oct. 20, 2019)). Moreover, in this case, Plaintiffs specifically dispute the validity of the arbitration agreements Defendants reference, including on the ground that HHAs did not enter these agreements voluntarily. *See* ECF No. 55 at 9–10, 22–23. Accordingly, the Court will permit notice to be sent to HHAs regardless of whether Defendants claim these HHAs signed arbitration agreements that preclude them from being part of the FLSA collective in this action. To the extent it is necessary to do so, the Court will address specific arguments related to the validity and effect of the arbitration agreements at a later stage in this litigation.

### 2. Case Caption in Notice

Next, the Court will permit Plaintiffs to include the case caption for this action at the top of the notice to potential opt-in plaintiffs. While Defendants argue that the case caption is likely to be misinterpreted as "judicial sponsorship or an endorsement on the merits by the Court," they cite no case from within the Second Circuit to support this argument. ECF No. 54 at 44 (citing *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1047 (N.D. Ill. 2003)). Moreover, Defendants ignore case law in this Circuit finding that it is appropriate to include the case caption in notices

to potential opt-in plaintiffs.  *See, e.g.*, *Panora v. Deenora Corp*, No. 19-CV-7267 (BMC), 2020 WL 7246439, at *4 (E.D.N.Y. Dec. 9, 2020) ("The case caption merely provides basic information about the case and is appropriately included on the Notice."); *Bertone v. HSBC USA, Inc.*, No. CV 16-6993 (JMA) (ARL), 2019 WL 13144578, at *2 (E.D.N.Y. Apr. 26, 2019). ("[C]ourts routinely approve notices which include the case caption." (collecting cases)).  The Court finds no reason to deviate from this practice and will permit the case caption to be included in the notice in this case.

### 3.   *Description of Potential Opt-In Plaintiffs' Obligations*

The Court further finds that the notice shall include reference to potential opt-in plaintiffs' discovery obligations.  Courts in this Circuit "routinely approve requests to include information regarding potential opt-in plaintiffs' discovery obligations" in opt-in notices.  *Knox v. John Varvatos Enters. Inc.*, 282 F. Supp. 3d 644, 666 (S.D.N.Y. 2017); *see Aboah*, 2021 WL 6337748, at *10 ("The choice to opt in to a FLSA collective action triggers different rights and obligations for an individual, and the notice should explain those.").  Indeed, courts in this Circuit commonly instruct that notices to potential opt-in plaintiffs should include "a neutral and non-technical reference to discovery obligations."  *See, e.g.*, *Aleman-Valdivia v. Top Dog Plumbing & Heating Corp.*, No. 20-CV-421 (LDH)(MMH), 2021 WL 4502479, at *8 (E.D.N.Y. Sept. 30, 2021); *Gorzkowska v. Euro Homecare LLC*, No. 3:19-CV-01773 (VAB), 2021 WL 222349, at *7 (D. Conn. Jan. 22, 2021) ("Courts in this District have commonly approved requests for language notifying potential opt-ins that they *may* be required to participate in the litigation in such ways.").  Accordingly, the parties' joint revised notice shall include a neutral and non-technical reference to potential opt-in plaintiffs' discovery obligations.

The notice may not, however, include language stating that potential opt-in plaintiffs may be responsible for costs and expenses if Defendants prevail.  Courts in this Circuit "have found

language about potential costs to be inappropriate given the remote possibility that such costs for absent class members would be other than *de minimis*, and the risk of an in terrorem effect that is disproportionate to the actual likelihood that costs will occur in any significant degree." *Rosario*, 828 F. Supp. 2d at 520 (cleaned up) (italicization added) (internal quotation marks omitted). Therefore, the Court will not permit the notice in this case to include such language.

### 4. Consecutive Numbering of Consent Forms

The Court denies Defendants' request that consent forms be consecutively numbered. While Defendants argue that consecutively numbering consent forms will alert counsel to situations in which an employee shares a copy of a consent form with an individual who has not been identified as an eligible opt-in plaintiff, they offer no support in case law for this practice. If Defendants—the parties producing the list of potential opt-in plaintiffs—seek to challenge the eligibility of an individual who returns a consent form, they may do so at the second step of FLSA certification in this action.

### 5. Information to Be Included in Opt-In List

In providing Plaintiffs with a list of potential opt-in plaintiffs, Defendants shall produce the names, last known mailing addresses, alternate addresses (if any), telephone numbers, email addresses, and dates of employment of potential collective members. *See Gorzkowska*, 2021 WL 222349, at *8 ("In general, it is appropriate for courts in collective actions to order the discovery of names, addresses, telephone numbers, e-mail addresses, and dates of employment of potential collective members."). This information shall be provided in the form of an Excel spreadsheet, as Plaintiffs have requested. *See Zhu*, 424 F. Supp. 3d at 273 (production of information regarding similarly situated employees in the form of an Excel spreadsheet "has been deemed appropriate by the courts in this Circuit"). The Court agrees with Defendants that they should not, at this stage,

be required to produce potential opt-in plaintiffs' employee identification numbers. *See Modise*, 2021 WL 3421711, at \*7–8 (discussing courts' reluctance "to authorize disclosure of private information, such as dates of birth and social security numbers in the first instance and without a showing that the information is necessary for the plaintiff to notify potential opt-ins of the collective action," and then declining to order the disclosure of employee identification numbers); *Headly*, 2022 WL 2181410, at \*9 (ordering defendants to disclose qualifying employees' information "without the employee ID numbers or social security numbers, since Plaintiff has shown no need for that information at this time").[10]

### 6. *Distribution of Consent Forms*

The Court will permit the final approved notice to be distributed to potential opt-in plaintiffs via mail, email, and text message, subject to the conditions below. *See Modise*, 2021 WL 3421711, at \*7–8 (permitting notice by mail, email, and text message); *Headly*, 2022 WL 2181410, at \*9–10 (same). The Court will not, however, permit Plaintiffs to post the notice in Defendants' clients' homes because such a practice would be "unnecessarily duplicative, and potentially unreasonable." *See Headly*, 2022 WL 2181410, at \*10 ("Unlike postings in a breakroom or on a message board at a . . . facility [of the defendant], it would be more invasive to allow postings at the residence of a . . . client [of the defendant]."). The Court further orders that Plaintiffs and Plaintiffs' counsel shall only use the telephone numbers provided by Defendants to send text messages to potential opt-in plaintiffs in order to verify receipt of the final revised notice and consent form. Moreover, Plaintiffs and Plaintiffs' counsel are limited to sending two such messages to any potential opt-in plaintiff during the opt-in period. Finally, Plaintiffs and their

---

[10] Likewise, the list of potential opt-in plaintiffs Defendants provide should not include such individuals' social security numbers.

counsel shall not initiate any phone calls to any potential opt-in plaintiffs but may speak with such persons via telephone if the potential opt-in plaintiff initiates the phone call.

### 7. Submission of Consent Forms

Potential opt-in plaintiffs may return their consent forms to Plaintiffs' counsel, rather than to the Clerk of Court.  Courts in this Circuit "are split on whether . . . opt-in plaintiffs should mail their consent forms to the named plaintiffs' counsel or to the Clerk of Court." *Zhu*, 424 F. Supp. 3d at 271.  Where the proposed notice or consent form "expressly informs putative plaintiffs of their 'right to retain separate counsel,'" however, courts are "more inclined to permit putative plaintiffs to return their consent forms" to the named plaintiffs' counsel. *Id.*  Courts have also recognized that "returning consent forms to the Clerk of Court may be 'unnecessary' and 'burdensome' to the Court 'in light of the budgetary constraints and financial limitations faced by the federal courts'" and, thus, "requiring potential plaintiffs to return their consent forms to the named plaintiffs' counsel may be 'the more practicable and efficient method of opting in.'" *Id.* (collecting cases).

Here, Plaintiffs' proposed notice expressly states that potential opt-in plaintiffs may "obtain and consult [their] own attorney[s]." ECF No. 50-18 at 2.  The Court expects that the parties' revised proposed notice will include similar language and—provided it does—the Court will be satisfied that "the risk that opt-in plaintiffs will be discouraged from selecting their own counsel is '*de minimis* at best.'" *Mason v. Lumber Liquidators, Inc.*, No. 17-CV-4780 (MKB), 2019 WL 2088609, at *15 (E.D.N.Y. May 13, 2019), *aff'd*, No. 17-CV-4780 MKB RLM, 2019 WL 3940846 (E.D.N.Y. Aug. 19, 2019).  Thus, the notice may direct recipients to send consent forms to Plaintiffs' counsel.  Plaintiffs shall file on the docket any consent forms completed by opt-in plaintiffs, redacting the contact information of opt-in plaintiffs from such filings.

### 8. Opt-In Period

It is common practice in this Circuit to set a 60-day opt-in period for potential plaintiffs to join an FLSA collective. *See Zhu*, 424 F. Supp. 3d at 272 (collecting cases). Here, the parties both assert that the opt-in period should last 60 days. ECF No. 50-18 at 3; ECF No. 54-20 at 2. The Court therefore adopts a 60-day opt-in period for this action.

### III. RULE 23 CLASS CERTIFICATION

In their Rule 23 certification motion, Plaintiffs ask the Court to certify a class with respect to their CMWA claims that includes: "All Caregivers or [HHAs] Defendants employed in Connecticut during the period of May 15, 2018, until the date of final judgment in this matter who worked at least one 24-hour shift for Defendants." The Court finds that Plaintiffs have failed to meet the requirements for class certification and, therefore, their motion for Rule 23 class certification, ECF No. 52, is DENIED.

### A. Legal Standard

Because FLSA and CMWA claims "usually revolve around the same set of facts," plaintiffs "frequently bring both types of claims together in a single action using the procedural mechanisms available under 29 U.S.C. § 216(b) to pursue the FLSA claims as a collective action and under Rule 23 to pursue the [CMWA] claims as a class action under the district court's supplemental jurisdiction." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 510 (2d Cir. 2020). This kind of action is typically referred to as a "hybrid" class and collective action. *Id.* In contrast to the FLSA, however, the CMWA does not have a provision for a collective action, which means that "plaintiffs may pursue a traditional 'opt-out' class action through class certification [under Rule 23] for their state law claims." *Shahriar*, 659 F.3d at 244.

The requirements for certifying a class action under Rule 23 are "unrelated to and more stringent than the requirements for 'similarly situated' employees to proceed in a collective action under § 216(b)." *Scott*, 954 F.3d at 520. Indeed, because Rule 23's requirements are independent of the requirements for similarly situated employees under the FLSA, *id.* at 518, it is error to equate the two sets of standards or to analyze an FLSA action under Rule 23's requirements, *id.* at 520. This is, in part, because "the language and structure" of section 216(b) and Rule 23 "bear little resemblance to each other." *Id.* at 519. Under the FLSA, "employees have a right to maintain a collective action," whereas Rule 23's requirements are designed "to protect the due process rights of absent class members, which is not a consideration in a nonrepresentative action such as a collective action under § 216(b)." *Id.*

Under Rule 23, a putative class must meet all four of the following requirements set forth in subsection (a) of the rule: the class must "(1) be sufficiently numerous, (2) involve questions of law or fact common to the class, (3) involve class plaintiffs whose claims are typical of those of the class, and (4) involve a class representative or representatives who adequately represent the interests of the class." *Myers*, 624 F.3d at 547. In addition, certification of the class must "be deemed appropriate under one of the three subdivisions of Rule 23(b)." *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010). Here, Plaintiffs seek certification under Rule 23(b)(3), which requires a showing that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This predominance requirement is satisfied if "(1) resolution of any material legal or factual questions can be achieved through generalized proof, and (2) these common issues are more substantial than the issues subject only to individualized proof." *In re Petrobras Sec.*, 862 F.3d 250, 270 (2d Cir.

2017) (cleaned up).  The party seeking class certification "bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met."  *Myers*, 624 F.3d at 547.

      B.  <u>Discussion</u>

In moving for Rule 23 class certification as to their state law claims, Plaintiffs rely in large part on the same allegations on which they base their FLSA claim that Defendants have improperly excluded meal and sleeping periods from HHAs' 24-hour shifts.  Plaintiffs argue that this practice violates the CMWA, and that Defendants violated state law by requiring HHAs to work more than seven and a half consecutive hours without a period of at least 30 consecutive minutes for a meal. In their motion, Plaintiffs also discuss their claim that Defendants failed to include the value of food and lodging provided to Plaintiffs and other HHAs in the HHAs' regular rates of pay when calculating overtime, but they do not allege that this practice violated state law, and they seek Rule 23 certification with respect to only their state law claims.  Accordingly, the food and lodging claim is not relevant to the present motion and the Court must only determine whether class certification is proper as to Plaintiffs' state law meal and sleeping period claims.  For the reasons below, Plaintiffs' request for Rule 23 certification is denied.

As discussed above with respect to Plaintiffs' request for conditional certification, Plaintiffs have not made a factual showing that Defendants excluded the meal and sleeping periods of other HHAs without an agreement to do so.  Importantly, compared to the "similarly situated" requirement of the FLSA, Rule 23(b)(3) presents a "much higher threshold of demonstrating that common questions of law and fact will predominate for Rule 23 purposes." *See Scott*, 954 F.3d at 518 (internal quotation marks omitted).  Because Plaintiffs have failed to meet the lower "similarly situated" threshold under the FLSA with respect to their meal and sleeping period claims, they

have likewise failed to meet the more stringent threshold for Rule 23 class certification to the extent they claim Defendants' conduct also violated Connecticut state law.

Plaintiffs' evidence falls short of showing that questions of law or fact common to putative class members predominate over any questions affecting only individual members, *see* Fed. R. Civ. P. 23(b)(3). For example, Plaintiffs have not presented evidence that Defendants have a common policy that violates the law with respect to all putative class members, such that Defendants' liability can be determined through generalized proof. *Cf. Headly*, 2022 WL 2181410, at *16 ("The predominant questions are questions of law common to all the claims, that is, whether [the defendant's] policies were lawful in failing to institute fixed sleeping hours, in requiring PCAs to make up personal time lost to interruptions (instead of paying for those interruptions), and in excluding an additional 45-minute break."). To the contrary, Plaintiffs have submitted Defendants' Employee Handbook, which provides that, "[u]nless applicable state law requires otherwise, if a non-exempt employee works a shift of twenty-four (24) hours or longer, up to eight (8) hours of sleeping time *can* be excluded from compensable working time," *if* several conditions apply. ECF No. 50-12 at 15 (emphasis added). Plaintiffs argue that, even though Defendants' policy states that sleep time can be excluded only by voluntary written agreement, Defendants excluded sleep time without entering such agreements with individual HHAs.

Whether Defendants are liable for this claim, however, will necessarily involve individualized questions as to whether Defendants indeed excluded sleeping periods of other HHAs without written agreements. As noted, Defendants have, for example, presented evidence that Plaintiff Stewart did in fact sign an agreement to exclude sleep time from her hours worked, ECF No. 56-8, that eight hours were not necessarily always excluded from HHAs' 24-hour shifts, Ward Dep. Tr. at 153:8–154:2, and that HHAs—including Plaintiff Aboah—were compensated

for hours worked beyond the 13-hour "placeholder" schedule in Defendants' timekeeping system, *see* ECF No. 56-2.  This evidence suggests that Defendants' liability, if any, will vary by HHA based on distinct inquiries specific to each HHA.  Accordingly, Plaintiffs have not shown by a preponderance of the evidence that questions of law or fact common to class members predominate over any questions affecting only individual members.  *See Petrobras Sec.*, 862 F.3d at 270 ("Where individualized questions permeate the litigation, those 'fatal dissimilarit[ies]' among putative class members 'make use of the class-action device inefficient or unfair.'" (alteration in original)).

Finally, Plaintiffs have failed to provide evidence demonstrating that other HHAs were required to work seven and a half consecutive hours without taking meal breaks of 30 minutes or longer.  The Court is unpersuaded by Plaintiffs' citations to deposition testimony and BrightStar's Employee Handbook to support the proposition that BrightStar's "Meal and Rest Break Policy" does not apply to HHAs.  Plaintiffs essentially argue that the existence of a meal break policy that applies to some employees *other than HHAs* demonstrates that Defendants *do not* provide any such meal breaks to HHAs.  But the mere fact that *this specific policy* does not apply to HHAs does not mean that HHAs are not provided with meal breaks at all.  Rather, it merely speaks to how Defendants provided meal and break periods to other employees who are not at issue in this action.  Accordingly, this evidence is insufficient to show that any HHAs other than Plaintiffs were, indeed, required to work seven and a half consecutive hours without being permitted to take break periods.

For these reasons, Plaintiffs' request for Rule 23 class certification with respect to their state law claims is denied.  In light of this holding, the Court need not address Defendants' arguments that Plaintiffs' counsel is not competent to represent a Rule 23 class in this case.

## IV.    CONCLUSION

For the reasons described herein, Plaintiffs' motion for conditional certification of an FLSA collective is GRANTED IN PART and DENIED IN PART, and Plaintiffs' motion for Rule 23 class certification is DENIED.  By **March 27, 2023**, the parties shall submit a revised proposed notice and consent form in compliance with this ruling.  By **March 30, 2023**, Defendants shall produce to Plaintiffs' counsel a list of all HHAs who worked more than 40 hours in any given week as an employee of BrightStar in Connecticut between June 2, 2017, and the present.

**SO ORDERED** at Hartford, Connecticut, this 16th day of March, 2023.

  _/s/ Sarala V. Nagala_
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE