UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| GWENDOLINE ABOAH and TANIA STEWART,<br>    *Plaintiffs*,<br><br>v.<br><br>FAIRFIELD HEALTHCARE SERVICES, INC. d/b/a BRIGHTSTAR CARE OF FAIRFIELD & SOUTHBURY and PETER R. MOORE,<br>    *Defendants*. | 3:20-CV-00763 (SVN)<br><br><br><br><br><br><br><br>December 20, 2023 |

## <u>ORDER ON THE REASONABLENESS OF DEFENDANTS' FEES AND EXPENSES INCURRED IN LITIGATING EMERGENCY MOTION</u>

Sarala V. Nagala, United States District Judge.

Pursuant to this Court's order at ECF No. 113, Defendants Fairfield Healthcare Services, Inc., d/b/a BrightStar Care of Fairfield & Southbury and Peter R. Moore ("Defendants") are entitled to the reimbursement of reasonable attorney's fees and costs expended in litigating their emergency motion against Plaintiffs, after Plaintiffs' counsel Attorney Nitor Egbarin made unauthorized communications to potential opt-in plaintiffs in this Fair Labor Standards Act ("FLSA") collective action. For the following reasons, the Court reduces the amount requested by Defendants and finds that Defendants are entitled to a reduced amount of $30,396 in attorney's fees, but the entire $3,956.20 in costs sought, for a total of $34,352.20.

**I.    BACKGROUND**

The Court need not recount the facts and procedural history of this FLSA collective action in its entirety in light of the parties' familiarity with this case.

Presently before the Court is Defendants' accounting of expenses incurred in successfully litigating their emergency motion against Plaintiffs. Accounting of Expenses, ECF No. 115. As the opt-in period of the FLSA collective was beginning, both Plaintiffs and Defendants filed emergency motions asserting that improper communications with potential opt-in plaintiffs had taken place. After a hearing, the Court found that, in disregard of the Court's prior orders, Plaintiffs' counsel Attorney Egbarin directed his legal assistants to make unauthorized calls to potential opt-in plaintiffs and personally sent the parties' joint notice and consent-form out before the start of the opt-in period. ECF No. 113 at 13. The Court therefore granted in part Defendants' emergency motion, and denied Plaintiffs' motion in its entirety. *Id.* at 23. Relevant here, the Court imposed monetary sanctions against Attorney Egbarin in the amount of $6,400, and ordered that Attorney Egbarin pay Defendants' reasonable expenses incurred in litigating their emergency motion, but not Plaintiffs' emergency motion.

After Defendants submitted an accounting of their expenses incurred in litigating the emergency motion, including the costs of attending the Court's May 22, 2023, hearing in person, the Court ordered supplemental briefing on the reasonableness of the expenses identified. ECF No. 119. The Court now orders as follows.

## II. LEGAL STANDARD

"As a general matter, the 'starting point' in analyzing whether claimed attorneys' fees are appropriate is 'the lodestar.'" *Yuajian Lin v. La Vie En Schezuan Rest. Corp.*, No. 15cv09507 (DF), 2020 WL 1819941, at *2 (S.D.N.Y. Apr. 9, 2020) (quoting *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)). The "lodestar" is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea*, 658 F.3d at 166.

"The reasonable hourly rate is the rate a paying client would be willing to pay," assuming that most paying clients "wish[ ] to spend the minimum necessary to litigate the case effectively" and seek out "counsel whose rates are consistent with those charged locally." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190, 191 (2d Cir. 2008). This is sometimes called the "forum rule." *See Kyros Law P.C. v. World Wrestling, Enter. Inc.*, 78 F.4th 532, 547 (2d Cir. 2023) ("[C]ourts are directed to calculate fees based on the prevailing rates in the forum in which the litigation was brought."). Thus, "[w]hen an attorney's requested hourly rate is higher than the rates found to be reasonable in the relevant market, it is within the Court's discretion to reduce the requested rate." *Yuajian Lin*, 2020 WL 1819941, at *2 (citing *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998)).

To overcome the presumption that the fees should be calculated based on the prevailing rates in the forum in which the litigation was brought, "a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Kyros Law P.C.*, 78 F.4th at 547 (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 172 (2d Cir. 2009)). In the "'rare' and 'exceptional' instances where an adjustment is warranted by the characteristics of the attorney, 'the trial judge should adjust the attorney's hourly rate in accordance with specific proof linking the attorney's ability to the prevailing market rate.'" *Millea*, 658 F.3d at 168 (quoting *Perdue v. Kenny A. ex rel Winn*, 559 U.S. 542, 555 (2010)).

As for the reasonableness of the hours expended, a district court must conduct "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994). A party may "satisf[y] his burden by providing detailed itemization of the hours

3

expended reconstructed through contemptuous billing records." *Hernandez v. Berlin Newington Assocs., LLC*, No. 3:10-cv-01333 (VLB), 2016 WL 5339720, at *5 (D. Conn. Sept. 22, 2016). Counsel "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

Adjustments to the lodestar calculation "are appropriate only in 'rare circumstances' because the 'lodestar figure [already] includes most, if not all, of the relevant factors constituting a reasonable attorney's fee." *Millea*, 658 F.3d at 167 (quoting *Perdue*, 559 U.S. at 553). For example, "'[t]he novelty and complexity of a case may not be used as a ground for [adjusting the lodestar]' because they are already included in the lodestar calculation itself, being 'fully reflected in the number of billable hours recorded by counsel.'" *Id.* (same). Similarly, "the quality of an attorney's performance generally should not be used to adjust the lodestar because considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate.'" *Id.* (same).

In any event, the party seeking fees bears the burden of demonstrating that its request is reasonable, and must provide the Court with enough information to assess its application. *Evans v. State of Conn.*, 967 F. Supp. 673, 691 (D. Conn. 1997) ("The burden is on the fee applicant to produce satisfactory evidence, in addition to the attorney's own affidavits, showing that the requested rates are in line with those prevailing in the community for similar services."); *Hernandez*, 2016 WL 5339720, at *5 (finding party satisfied burden by producing contemporaneous billing records). In addition to evidence adduced by counsel, "[a] district court may take judicial notice of the rates awarded in similar cases and may rely upon its own familiarity with the rates prevailing in the district." *Hernandez*, 2016 WL 5339720, at *3.

### III.     DISCUSSION

For the following reasons, the Court finds that Defendants are entitled to a reduced amount of $30,396 in attorneys' fees, but the entire $3,956.20 in costs sought, for a total of $34,352.20 in reasonable expenses.  Although the entirety of the costs and nearly all of the hours expended are reasonable, the Court will reduce the applicable hourly rates so that they are at the top end of the ranges identified as reasonable for FLSA cases in this District.

#### A.  Reasonableness of Hourly Rates

The Court first will reduce the hourly rates requested for the three individuals who worked on litigating Defendants' emergency motion:  partner Donald Samuels, associate Matthew Kapsak, and paralegal Robyn Mills.  The rates requested for all three are above the range of reasonable rates established for similar cases in the District of Connecticut.  Although there are a limited number of cases, the Court cannot find based on Defendants' supporting papers that rates in excess of these ranges are nonetheless reasonable.

Beginning with Attorney Samuels, the Court reduces his requested rate of $460 per hour to $400 per hour, the top end of the range recognized as reasonable.  Courts in the District of Connecticut have generally approved rates of $300 to $400 for partner-level work in FLSA cases. *See Tahirou v. New Horizon Enters., LLC*, No. 3:20-cv-00281 (SVN), 2022 WL 510044, at *8 (D. Conn. Feb. 21, 2022) ("[C]ourts in this district have generally approved hourly rates between $300 and $400 for experienced partner-level employment law attorneys."); *Wei v. Sichuan Pepper, Inc.*, No. 3:19-cv-525 (JBA) (TOF), 2022 WL 385226, at *17 (D. Conn. Jan. 17, 2022), *report and recommendation adopted*, 2022 WL 382019 (D. Conn. Feb. 7, 2022) (collecting cases); *Tapia v. Mateo*, 96 F. Supp. 3d 1, 6 (D. Conn. Mar. 31, 2015) (finding experienced litigator's request for $300 per hour in the area of federal wage and hour cases "in line with fee requests approved by other courts in this District in connection with FLSA matters"); *Fuk Lin Pau v. Jian Le Chen*, No.

5

3:14cv841(JBA), 2015 WL 8490907, at *2 (D. Conn. Dec. 10, 2015) (finding rate of $350 per hour reasonable for named partner with almost ten years of experience and approximately seventy-percent of practice involving employment law).  Because Attorney Samuels has been practicing law since 1986, has earned significant honors, and has represented domestic home care employers in litigation throughout the country, he is entitled to an hourly fee at the top end of this range. Samuels Decl., ECF No. 120-1 ¶ 2; ECF No. 124 at 2.

Next, the Court will reduce the hourly rate requested for Attorney Kapsak from $360 per hour to $225 per hour for similar reasons.  "Courts in this district have generally approved hourly rates . . . between $125 and $225 per hour for associate-level attorneys."  *Tahirou*, 2022 WL 510044, at *8 (citing *Wei*, 2022 WL 385226, at *17).  The Court agrees, based on Kapsak's senior level experience and quality of services offered in successfully litigating Defendants' motion, that he is entitled to a rate at the very top of that range.  *See* ECF No. 120-1 ¶ 3 (noting that Kapsak is a seventh-year associate who has been recognized as a "Best Lawyers:  Ones to Watch in America" for his experience in employment litigation).

Last, the Court will reduce the hourly rate for paralegal Mills' services from $290 per hour to $140 per hour.  The requested rate of $290 per well is well above the hourly rate of $140 found to be reasonable in this district.  *See Doe v. Darien Bd. of Educ.*, No. 3:11-cv-1581 (JBA), 2015 WL 8770003, at *6 (D. Conn. Dec. 14, 2015); *Crawford v. City of New London*, No. 11-cv-1371 (JBA), 2015 WL 1125491, at *6 (D. Conn. Mar. 12, 2015).  Especially as the tasks charged here—finalizing exhibits—did not require expertise, the Court finds it appropriate to reduce the rate, notwithstanding Mills' experience.  ECF No. 120-1 ¶ 4 (noting that Mills has been a paralegal for more than twenty-five years).

The Court declines to make any upward adjustment based on the additional evidence or cases offered by Defendants. Defendants argue that the Court should consider the hourly rates awarded in complex litigation cases, rather than only FLSA cases, including one where a state court approved a rate of $550 per hour for an experienced partner-level attorney, and another where the court awarded $490 per hour. *See* ECF No. 120 at 2–3 (citing *Sicigano v. Pearce*, No. NNH CV-22-6126506-S, 2023 WL 4073596 (Conn. Super. Ct. June 14, 2023), and *Niantic CT DG Store, LLC v. MCG Niantic, LLC*, No. KNLCV20-6048423-S, 2023 WL 2986719 (Conn. Super. Ct. Apr. 13, 2023)). But the Court cannot find this is a rare or exceptional instance where an adjustment above the prevailing market rate for FLSA cases is warranted. *Millea*, 658 F.3d at 168.

Moreover, the fact that the fees at issue involve the successful litigation of an emergency motion does not itself warrant an upward adjustment of the hourly rate. The Supreme Court has cautioned that this may constitute double counting as "the novelty and complexity of a case . . . 'presumably [are] fully reflected in the number of billable hours recorded by counsel.'" *Perdue*, 559 U.S. at 553 (quoting *Blum v. Stenson*, 465 U.S. 886, 898 (1984)). Thus, the Court finds this is adequately accounted for in the second step of the lodestar calculation.

Further, the fact that Defendants charged a negotiated rate significantly below their national rate also does not necessarily weigh in favor of calculating the lodestar with their requested rate here. ECF No. 120-1 ¶ 5. If anything, it shows that Defense counsel acknowledged some rate closer to $400 would be reasonable for litigating this type of case in this District. Because the Court agrees that the attorneys and paralegal possess a significant degree of experience and

provided quality legal services in successfully litigating the emergency motion, it still finds hourly rates at the top of the established ranges are appropriate.[1]

In short, the Court finds it appropriate to apply the forum rule to reduce the amount of attorney's fees awarded.

### B. Reasonableness of Hours Expended

The Court next finds that, in general, the hours expended by Attorneys Samuels and Kapsak and paralegal Mills in litigating their emergency motion are reasonable. Defendants offered evidence of the hours expended in the form of detailed, contemporaneous timesheets regularly kept in the form of business. ECF No. 115-1; *see also* ECF No. 120-1 ¶ 7. *See also Hernandez*, 2016 WL 5339720, at *5.

The Court does not agree with Plaintiff that a few highlighted billing entries represent unnecessary or redundant hours. First and foremost, the Court explicitly allowed Defendants to submit the costs of attending the Court's in-person hearing (which would include travel time). ECF No. 113 at 24; ECF No. 115 at 2. The Court will disallow, however, the ten hours of attorney's fees related to travel time for Attorney Kapsak to travel for the hearing.[2] While the Court recognizes the value in having associates attend court proceedings when they participated heavily in drafting the motions being argued, Attorney Egbarin should not be required to pay for Attorney Kapsak's travel time, given that Attorney Samuels argued the motion and Attorney Kapsak is not an attorney of record in this case.

---

[1] The Court acknowledges that Attorney Egbarin's hourly rate is $375 per hour. ECF No. 124 at 2 (citing Egbarin Decl., ECF No. 26-2 ¶ 17, *Masoloko v. Your Family Home Care LLC*, No. 3:22-cv-1658-JBA); *see also* Egbarin Decl., ECF No. 142-1 ¶ 6. But given Attorney Egbarin's history of ethical violations, including having been suspended and/or disbarred for several years, *see Faniel v. PAFY, Inc.*, No. 3:20-CV-00387 (VLB) (TOF), 2022 WL 1212813, at *10 (D. Conn. Feb. 14, 2022), the Court assigns little weight to Attorney Egbarin's argument that Attorney Samuels' rate of $460 per hour is far too high.

[2] Defendants are not seeking reimbursement for Attorney Kapsak's airplane ticket, lodging, or time spent in attendance at the hearing.

Second, the hours spent briefing the issue of disqualification are reasonable, as the Court ordered supplemental briefing on this issue (and ultimately ordered Attorney Egbarin disqualified from representing the FLSA collective in this action).

Last, although Attorney Egbarin takes issue with the amount of time Defendants' attorneys spent researching and analyzing these issues, the Court finds that this simply reflects the attorneys' diligence in litigating this motion.[3]

The Court notes, however, that in a few instances, it appears the Defendants included hours expended on matters unrelated to the emergency motion, and thus the Court will exclude those for purposes of calculating the lodestar.  Specifically, the Court will exclude:  (1) the .5 hours billed by Attorney Samuels on May 5, 2023, for a "[t]elephone conference with M. Kapsak regarding opposition to motion for conditional certification," as the motion for conditional certification is distinct from Defendants' emergency motion; and (2) the 1.1 hours billed by Attorney Samuels on May 8, 2023, for "review[ing] pleadings from plaintiff regarding expedited hearing regarding improper contacts with perspective class members," as Defendants represented that they are only seeking fees for litigating their emergency motion, not responding to Plaintiffs' motion.  ECF No. 115-1 at 2–3.  The Court will also reduce the hours spent on May 8, 2023, by Attorney Kapsak in half, as Defendants agree in reply with Plaintiffs' counsel that this entry represents time spent on both Defendants' and Plaintiffs' emergency motions.  ECF No. 124 at 5.[4]

---

[3] The Court also disagrees with Attorney Egbarin's suggestion that Defendants were "unsuccessful in their claim that [he] engaged in solicitation."  ECF No. 123 at 7.  Indeed, the Court specifically stated that Attorney Egbarin's assistants' communications with Brown and Hadonu "tread dangerously close to violating ethical rules prohibiting person-to-person solicitation of clients."  ECF No. 113 at 15.  Although the Court did not wish to prolong resolution of Defendants' emergency motion by conducting an evidentiary hearing on this issue, Attorney Egbarin should in no way interpret the Court's order as suggesting Defendants were *unsuccessful* in their claim that he engaged in improper solicitation.

[4] In their accounting of expenses, Defendants reduced the hours sought in half on two other occasions, where a billing entry referenced work performed on both pursuing Defendants' emergency motion and responding to Plaintiffs' emergency motion.  ECF No. 115 at 2, n. 2.

Taking into account these reductions, the hours reflected in the timesheets—that Samuels billed a total of 43.2 hours, Kapsak 56.8 hours, and Mills 2.4 hours—is reasonable. *See Millea*, 658 F.3d at 167 (noting that the complexity of the case is generally reflected in the number of billable hours recorded).

### C. Lodestar Calculations, Costs, and Total

Thus, the Court finds that: partner Samuels' fees, multiplying a reasonable hourly rate of $400 per hour by a reasonable number of 43.2 hours of work on this matter, totals $17,280; associate Kapsak's fees, multiplying a reasonable hourly rate of $225 per hour by a reasonable number of 56.8 hours, totals $12,780; and paralegal Mills's fees, multiplying a reasonable hourly rate of $190 by 2.4 hours of work, totals $336. This is a total of $30,396 in reasonable attorney's fees.

Next, the Court finds that Defendants are also entitled to $3,956.20 in costs, as this is the sum of reasonable travel and research costs identified on Defendants' invoices. *See* ECF No. 115-1 at 5 (detailing $2,996.00 in costs), 9–10 (detailing $508.91 in costs), 15 (detailing $451.29 in costs).

Taken together, Defendants would therefore be entitled to $34,352.20 in reasonable legal expenses. The Court notes that this is below the total $54,087.80 requested by Defendants; as described above, although the Court agrees with Defendants on the amount of costs to which they are entitled ($3,956.20), it does not agree on the total amount of attorney's fees (the $50,131 sought). ECF No. 120-1 ¶ 19. The Court has reduced the applicable hourly rates, and it appears that in requesting the $50,131, Defendants may have relied upon sub-totals in their timesheets, without accounting for how those totals include redacted entries, which the Defendants indicated they are not seeking.

The Court declines to reduce the $34,352.20 Attorney Egbarin must pay Defendants' counsel solely because he is a solo practitioner, and therefore may have limited financial resources. In declining to adjust the fee award in this manner, the Court acknowledges that "it lies well within [it's] discretion to temper the amount to be awarded against an offending attorney by a balancing consideration of his ability to pay." *Oliveri v. Thompson*, 803 F.2d 1265, 1281 (2d Cir. 1986). When an offending attorney requests that the court reduces the award, however, courts often consider evidence of that attorney's financial hardship. *See id.* at 1268 (holding an evidentiary hearing before reducing sanctions amount); *Estate of Shaw v. Marcus*, Nos. 14 Civ. 3849 (NSR)(JSM), 14 Civ. 5653 (NSR)(JCM), 2017 WL 4326543, at *2 (S.D.N.Y. Sept. 28, 2017) (considering an attorney's supporting declaration that he has "had negative income for two years in 2015 and 2016" before reducing sanctions amount). Such evidence aids the Court in exercising its discretion and ensuring the fee award serves the "principal objective of . . . 'the deterrence of baseless filings and the curbing of abuses'" without being more severe than reasonably necessary. *Kyros Law P.C.*, 78 F.4th at 548 (quoting *Caisse Nationale de Credit Agricole-CNCA v. Valcorp, Inc.*, 28 F.3d 259, 266 (2d Cir. 1994)).

After Attorney Egbarin raised the issue of his limited ability to pay Defendants' fees, the Court provided him with the opportunity to file supplemental briefing and exhibits to support his assertion that his status as a solo practitioner necessarily means he has limited financial resources—but his filings show just the opposite. Attorney Egbarin's supplemental declaration states that he expects to receive approximately $275,000 from a recent settlement, a substantial attorney's fee related to a recent favorable jury verdict, and a "substantial attorney's fee for the work performed from 2020 to 2023" in the present case. Egbarin Decl., ECF No. 142-1 ¶¶ 4–6. Rather than demonstrating an inability to pay, these figures suggest Attorney Egbarin can afford

11

the fee award here. Moreover, Attorney Egbarin does not appear to dispute Defendants' contention that he operates his practice without any support staff; it therefore appears there is little overhead that offsets this substantial revenue. Although he incurs costs of litigation upfront, Attorney Egbarin's declaration, on the whole, convinces the Court that there is no evidentiary basis for concluding he cannot pay the fee award—despite his status as a solo practitioner. For these reasons, the Court finds that the fee award of $34,352.20 serves the purposes of deterrence and compensating Defendants without imposing undue financial hardship on Attorney Egbarin.

IV.     CONCLUSION

For these reasons, Attorney Egbarin shall submit payment in the amount of $34,352.20 (money order or bank check made payable) to Defendants' counsel by **March 20, 2024**. Attorney Egbarin shall file a notice indicating his compliance with this order by **April 19, 2024**.

**SO ORDERED** at Hartford, Connecticut, this 20th day of December, 2023.

                                          */s/ Sarala V. Nagala*
                                          SARALA V. NAGALA
                                          UNITED STATES DISTRICT JUDGE